W. R. JACQUES, Respondent, v. ROBERT Y. GOGGIN and CORA J. GOGGIN (Mrs. Robert Y. Goggin) as Trustees for the EMPIRE PRINTING COMPANY, a Dissolved Corporation, Defendants, MOSS H. SILVER-FORB, Executor and HANNA LEVINE, Executrix of the Estate of SAMUEL E. SEGELBOHM, Deceased, Garnishees, Appellants, No. 42075—245 S. W. (2d) 904.

Division Two, January 14, 1952.

Motion for Rehearing or to Transfer to Banc Overruled, February 11, 1952.

1006

*Moss H. Silverforb* for appellants.

*Robert S. Burns* for respondent.

ELLISON, J.—This is a garnishment proceeding under execution instituted in the circuit court of Jackson County by the plaintiff-respondent Jacques, as judgment creditor of the Empire Printing Company, a dissolved corporation, against its trustees Mr. and Mrs. Robert Y. Goggin, and Samuel E. Segelbohm as garnishee—for whom his executor and executrix were substituted as defendants upon his death during the pendency of the litigation. These latter are the appellants here. The respondent Jacques claims as execution creditor the value of certain printing machinery and equipment of the Empire Printing Company and its trustees. The defendant-appellant garnishees claim the property under a chattel mortgage and replevin suit brought by Segelbohm and adjudicated in his favor before his death. The jury in the garnishment proceeding below returned a verdict for

respondent Jacques in the sum of $9500.00. Hence this court has appellate jurisdiction under Art. V, Sec. 3, Const. Mo. 1945.

The underlying indebtedness due respondent Jacques was a judgment in unlawful detainer in the amount of $9,330.54 with interest, for double the amount of rents and profits [Sec. 534.330, R. S. 1949, Sec. 2850, Mo. R. S. A.] accrued on premises located at 718-20 Delaware Street in Kansas City, owned by Jacques and rented for a printing establishment to the Empire Printing Company, and later to its trustees, the defendant Goggins. The charter of the company was forfeited by the Secretary of State on January 1, 1941, and the printing business was thereafter conducted by its trustees, though for some time in its name.

The foregoing unlawful detainer suit was brought by respondent Jacques in a Justice of the Peace Court in Kansas City, and judgment was rendered for him on February 15, 1946. He filed a transcript thereof in the office of the circuit clerk over two years later, in September, 1948. An execution on the transcripted judgment was issued out of the circuit clerk's office the next month, directed to the two Goggins, trustees of the defunct corporation, together with a summons to Segelbohm as garnishee. Presently thereafter respondent Jacques filed interrogatories in the instant case addressed to Segelbohm, inquiring (among other things) whether he was indebted to the Goggins, as trustees, and whether he had taken from their possession an itemized list of machinery and equipment belonging to the Printing Company. These interrogatories, garnishee Segelbohm's answers thereto and plaintiff-respondent Jacques' replies constitute the pleadings in the case. Sec's 525.130, 140, 190, R. S. Mo. 1949.

The assignments of error in the brief of the defendant-appellant garnishees complain that the trial court erred: (1) in trying the garnishment proceeding as a jury case instead of an equity case; (2) in directing the jury to find in favor of the plaintiff-respondent Jacques; (3) in admitting his testimony over the objections of the defendant-appellant garnishees; (4) in refusing the latter's request for a directed verdict at the close of all the evidence; (5) because under the undisputed evidence and the law the verdict and judgment should have been for them.

Segelbohm's answer to interrogatory No. 3 denied he was indebted to the Goggins as trustees, and claimed the itemized list of property (and more) under a chattel mortgage indefinitely alleged to have antedated January 14, 1946, to secure a promissory note payable to him, for $6096.45, with interest, aggregating about $8400 on that date, for money theretofore loaned "said parties" [the printing company and its trustees], and prior to any claim of indebtedness made by plaintiff-respondent Jacques. As will be observed, this answer did not state the date of either the secured note or the chattel mortgage, except to say the latter antedated January 14, 1946 [which

was the date of his replevin suit mentioned in the next paragraph hereof]. However he did allege that the chattel mortgage constituted a first lien on the itemized property; that the secured indebtedness was in default prior to that date; that he had theretofore demanded payment thereof, which was refused; and that he thereupon demanded possession of the encumbered property including that referred to above, which demand was refused.

Further garnishee Segelbohm alleged in his answer that on January 14, 1946, he instituted a replevin suit in the Jackson County circuit court, against the Printing Company and its trustees, for recovery of the specific property itemized in the foregoing chattel mortgage, nearly all of which is listed in appellant's interrogatory No. 3; that the defendants filed a general denial; and that the circuit court, Division 2, rendered judgment for him (Segelbohm) for *possession* of the property covered by the mortgage and described in respondent Jacques' petition herein, by *stipulation* of the parties on March 12, 1946. But this judgment made no provision as to the payment of money in lieu of the property, and respondent Jacques was not a party to the suit or stipulation.

Still further answering respondent's interrogatories 4-9, Segelbohm stated that he took possession of the replevined property but was unable to dispose of it for more than $5000 [less than 60% of the indebtedness due him on his said chattel mortgage note] and that at the time of answering he still had the property but would surrender it on payment of $9000, the amount then due on the note.

Respondent Jacques' amended reply to Segelbohm's answers to the foregoing interrogatories alleged that: at the time of the execution of the chattel mortgage and secured $6096.15 note given by the Empire Printing Company and its trustees to Segelbohm, its corporate charter had been forfeited by the Secretary of State on January 1, 1941, for failure to make reports as required by statute; that the defendant Goggins as trustees had no power or legal authority to execute the note and mortgage in the name of the corporation, or to place any lien on its assets; that said purported indebtedness secured by the chattel mortgage and other indebtedness claimed by Segelbohm in his answers was the indebtedness of the corporation, and all of it was created after the forefeiture of its charter.

Further the reply alleged that: said chattel mortgage was dated April 11, 1941, but was not filed of record until May 22, 1942, during which interval all or most of the indebtedness of the defunct corporation to respondent Jacques accrued; and that the $6096.15 note purportedly secured by said mortgage was dated January 22, 1942, over nine months after the date of the mortgage, in consequence of which the latter was wholly without consideration as to the Empire Printing Company and its trustees.

Continuing, respondent Jacques' amended reply alleged that he was not a party to Segelbohm's replevin suit and his rights were not adjudicated thereby; that said chattel mortgage was fraudulent as to him; that it was executed in manner and form as it was, and said indebtedness otherwise claimed, for the purpose of cheating and defrauding him, Jacques, of his rights ■ against the Empire Printing Company; that said company as a corporation and the two Goggins as its trustees were not indebted to the garnishee Segelbohm in any sum whatever, and that he had no interest, equity or right in the corporation's property superior to the right of respondent Jacques.

Still further Jacques' amended reply alleged that Segelbohm had been in possession of all the machinery listed in his answer to the interrogatories since about May 6, 1946, after recovering it in his replevin suit; that it was then worth $12,500; that he had ever since been using it as his own and obtaining income therefrom, without foreclosing on it; that it had depreciated in value; and that his acts amounted to a conversion of the property. And the reply ended with a prayer for judgment against the appellants in the sum of $9,330.54, the amount of the judgment recovered by Jacques in his unlawful detainer suit, with interest at 6% from *September* 15, 1946. This date seemingly is erroneous since the date of Jacques' judgment against the Empire Printing Company in that suit was *February* 15, 1946.

The foregoing interrogatories, answers and replies do not give the date and termination of Jacques' written lease of the building to the Empire Printing Company, but the evidence shows it was dated August 31, 1940, and ran for five years beginning October 1, 1940 and ending September 30, 1945, and called for an aggregate rental of $5040 payable on a rising scale per month each two years after the first year. The cause was tried to a jury in April, 1950. Some evidence was introduced at the trial. It will be referred to if and as necessary in this opinion.

■ Appellants' brief makes no reference to their five "Assignments of Error," as set out in the beginning of this opinion. We shall, therefore, not refer to them. Our discussion will be confined to the "Points and Authorities" in their brief. The first of these is that the "Judgment against garnishees (appellants) for a certain amount of money upon a directed verdict or peremptory instruction was erroneous. There must be a finding of amount of property held and an order and refusal or failure to pay it into court before a direct judgment can be rendered against any garnishee."

On this point appellants cite the first of the three statutes listed below.[1] Quoting substantially, it provides that if upon the trial of a

[1]Sec. 525.200, R. S. 1949, Sec. 1579 Mo. R. S. A.; Sec. 525.070, R. S. 1949, Sec. 1566 Mo. R. S. A.; Sec. 525.080, R. S. 1949, Sec. 1567 Mo. R. S. A.

garnishment proceeding it appears that property, effects or money of the defendant are found in the hands of the garnishee, the court or jury shall find what property or effects, and the value thereof, or what money are in his hands, and unless he shall discharge himself, as provided by Sec. 525.070 by paying over or delivering the same to the sheriff, or unless he shall, within such time as the court shall direct, as provided in Sec. 525.080, pay or deliver up such property, effects or money, or shall execute his bond for the payment or delivery thereof, then the court shall enter up judgment against the garnishee for the proper amount or value as found in money, and execution may issue forthwith to enforce such judgment.

As applied to this case it will be seen that this statute, Sec. 525.200 required a finding that the appellant-garnishee-executors of Segelbohm had in their hands property, effects or money belonging to the defendant-trustees (the Goggins). Next, it required a finding by the court or jury of what property or effects the garnishee-executors had and the value thereof, and the amount of money, if any. Next, it granted the garnishee-executors the right to discharge themselves under Sec. 525.070 by delivering the property and paying money to the sheriff. Thirdly, it granted the court the right to fix a time under Sec. 525.080, within which the garnishee-executors should deliver the property and effects or money to the sheriff or give bond therefor. And fourthly, it provided that unless the garnishee-executors comply with one of the foregoing alternatives the court shall enter up a final judgment against them for the proper amount or value as found in money, execution to issue forthwith to enforce such judgment.

The appellant garnishee-executors refused to comply with either of the first three alternatives, on the theory that they were the owners of the property involved under the deceased Segelbohm's chattel mortgage and the judgment in his favor in the replevin suit. But the first point in their brief is not addressed to the merits of that question of ownership. On the contrary they invoke a rule of procedure— namely that the trial court should have made an *interlocutory* order requiring the garnishee-executors to deliver the property to the sheriff before entering its final judgment. On this point they cite the decisions listed below.[2] The respondent Jacques also invokes the Gilbert case along with three others cited below.[3]

Of the decisions cited by appellants the Roberts and Panagos decisions both held that under what is now Sec. 525.070 [the Roberts case also including the present Sec. 525.200] a final judgment on garnish-

---

[2]Gilbert v. Malan, 231 Mo. App. 469, 484(12), 100 SW. (2d) 606-616(16); Roberts v. Meek (Mo. App.) 45 SW. (2d) 537, 538(6); Panagos v. General Cigar Co. (Mo. App.) 268 SW. 643, 644(3).

[3]State ex rel. Rabiste v. Southern, 300 Mo. 417, 431(7), 254 SW. 166, 169(6); Walkeen Lewis Millinery Co. v. Johnson, 130 Mo. App. 325, 333(1), 109 SW. 847, 848; Ralston Purina Co. v. King (Mo. App.) 101 SW. (2d) 734, 735(9).

ment is premature and void if there has been no prior interlocutory order or judgment requiring the garnishee to pay into court the money due from him to the principal debtor. Both cases were reversed outright for that reason. On the other hand the Gilbert case, cited by both parties, held that in those circumstances the final judgment is not void, but merely "irregular and unauthorized." And it reversed and remanded the cause so that the trial court might make the proper interlocutory orders on the garnishee to deliver the property or money to the sheriff or into court, after which the court could re-enter its final judgment without another trial. And the Walkeen and Ralston cases cited by respondent were to the same effect.

But the Rabiste case [the only decision of this court cited here by either party] went even further, as we construe it. It pointed out that what is now Sec. 525.080 merely provides the trial court "may", [that is to say, is *authorized* to] make an order requiring the delivery of the property or the payment of the money owing by the garnishee, to the sheriff or into court at such time as the court may direct. Then the decision continued, saying the section "was undoubtedly enacted to enable the plaintiff, *if he is not satisfied with the responsibility* of garnishee, to require garnishee to turn over the property to the sheriff (or to give security for its delivery in due course if the court so orders) in advance of the determination that such property belongs to the defendant and is subject to attachment." (Emphasis ours).

Then it declared the law to be that "No lien exists in favor of a plaintiff upon property of an attachment or execution defendant in the hands of the garnishee until such property comes into the hands of the sheriff. Until that time, such plaintiff must look to the *personal responsibility* of garnishee, unless he proceeds under Sec. 1853 [now Sec. 525.080] to have such property delivered to the sheriff or to have security for its delivery exacted from garnishee as provided in said action." (Emphasis ours). We understand this to mean the plaintiff may rely on a personal judgment against the garnishee, as distinguished from a recovery of the specific property involved, if he so elects.

■ Appellants' second point is that the trial court had no jurisdiction of the garnishment proceeding because the sheriff's return did not show service of the garnishment writ on Segelbohm. Appellants concede this was immaterial so far as concerned garnishee Segelbohm personally, because he entered his appearance by filing answer to the interrogatories addressed to him. But appellants' counsel urge the lack of a sheriff's return on the writ was fatally ■ erroneous as regards the *res*, that is to say, the property covered by Segelbohm's chattel mortgage and theretofore recovered in his replevin suit. This is said to be because the court cannot acquire jurisdiction over the *res*, even by consent of the parties, unless the sheriff makes a return on the garnishment summons, thereby bringing the property within the

jurisdiction of the court. On this point they cite the following cases.[4]

Counsel for respondent Jacques assert to the contrary that the record shows the sheriff did make a return on the garnishment writ. The original transcript in this court shows the filing in the circuit court of Jacques' transcripted judgment in unlawful detainer obtained in the Justice Court and sets it out. It also shows the issuance of an execution thereon, and a summons to garnishee Segelbohm, which was *signed* by the sheriff. But it does not include a sheriff's return of service thereof. However, after the cause had reached this court respondent Jacques filed a motion to file a supplemental transcript here, which motion was sustained by this court over appellants' objection. This supplemental transcript contains the affidavit of the deputy sheriff who served the garnishment writ that he served the same on Segelbohm and made a return of such service thereon under authorization of the circuit court and pursuant to Sec. 511.270, R. S. 1949, Sec. 1266 Mo. R. S. A.; Sec. 511.260(3), Sec. 1265(3), Mo. R. S. A. This was sufficient, and we rule this point against appellants.

 The third point made by the appellant garnishees (Segelbohm's executors here) is that a third party garnishing creditor (respondent Jacques here) has no greater rights than his debtor (the Printing Company's trustees here) had against the garnishee (Segelbohm) at the time of his (Jacques') garnishment. And appellants assert the defendant trustees had *no* rights against garnishee Segelbohm when Jacques instituted the instant garnishment proceeding in October, 1948, because Segelbohm had theretofore, in March, 1946, recovered the Printing Company's printing equipment from its trustees by agreement in his replevin suit based on his chattel mortgage. On this point appellants cite Pickering v. Hartsock (Mo. App.) 287 SW. 819, 822 (8, 9), and there are other cases to the same effect, 14 West's Mo. Digest, p. 339, § 105.

Respondent Jacques does not dispute that law, but points out that the doctrine does not apply against a third party creditor where there is fraud in the settlement; and that he may assail it, citing Potter v. Whitten, 170 Mo. App. 108, 120(2), 155 SW. 80, 83(3); McDaniel v. Bryan, 123 Mo. App. 640, 643, 100 SW. 1103, 1104. He contends there was vitiating fraud in the settlement here, and that the chattel mortgage and note were void.

This chattel mortgage was given by the Printing Company as a corporation. It was undated but signed and sworn to on April 11, 1941. This was over three months after the Printing Company's charter had been forfeited by the Secretary of State on January 1, 1941. It was not filed in the recorder's office until May 27, 1942, over

---

[4] Federal Truck Co. v. Mayer, 216 Mo. App. 443, 451, 270 SW. 407, 409(3); State ex rel. Adkins et al. v. Grugett et al., 228 Mo. App. 8, 13(4), 63 SW. (2d) 413, 416(3); State ex rel. Shaw State Bank v. Pfeffle (Mo. App.) 293 SW. 512, 516(14); Epstein v. Salorgne, 6 Mo. App. 352, 354.

a year after its execution. The $6096.45 note secured thereby was dated January 22, 1942, over nine months after the mortgage was given, and it did not purport to secure any future indebtedness. The mortgage was never foreclosed, but the property pledged therein was surrendered to Segelbohm by the trustees of the defendant corporation by agreement on March 6, 1946, over four years after the date of the note. This was less than a month after Jacques (a stranger to Segelbohm's replevin suit) had recovered his judgment for $9330.54 in his unlawful detainer suit against the corporation and its trustees, the Goggins, on February 15, 1946.

Counsel for respondent Jacques contends Segelbohm's chattel mortgage was void for four reasons. The first is that it was "irregular" on its face, in that it was ▮▮▮▮ executed on April 11, 1941, over nine months before the execution on January 22, 1942, of the $6096.45 note it purported to secure. That was the only indebtedness specified in the mortgage and there was no provision that it would cover future advances. Further, there is no suggestion in the brief of counsel for the appellant garnishees that there was a mistake in the dating of the note. However, the defendant trustee Robert Y. Goggin did testify he signed the chattel mortgage, and that Segelbohm loaned him money on it to pay debts to the government. When that was done the record does not show, except it appears the money was loaned after the charter of the corporation had been forfeited and he (Goggin) was operating the printing business as trustee.

We think the evidence here fails to show there was an existing debt covered by the chattel mortgage when the latter was given. And it is fundamental that for a transaction to constitute a chattel mortgage there must be a debt covered by the mortgage. 14 C. J. S. § 1, p. 575, § 37, p. 644; 10 Am. Jur., § 39, p. 743. True, a chattel mortgage may cover future advances·if it so stipulates. But the instant mortgage did not do that.

Next respondent asserts the chattel mortgage was void because it was not filed of record until May 27, 1942, over thirteen months after its execution on April 11, 1941.. Sec. 443.460, R. S. 1949, Sec. 3486, Mo. R. S. A., provides no mortgage or deed of trust of personal property shall be valid as to third parties unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be recorded or filed in the office of the recorder of deeds of the county where the mortgagor resides. The instant mortgaged property was not delivered to the mortgagee Segelbohm, but was retained and used by the trustees of the mortgagor, the Empire Printing Company, until Segelbohm got it by stipulation in his replevin suit on March 12, 1946, nearly five years after the mortgage was given on April 11, 1941. Respondent cites a number of decisions on

this point,[5] which hold delay in recording a chattel mortgage is fatal under our Missouri statute. The delay in these cases ranged from 1, 4, 5 and 13 days to 3 months and five days in the longest instance. Obviously the delay of over a year in this case made the mortgage void as to respondent Jacques, a third party.

Counsel for respondent Jacques further contend that since the chattel mortgage and secured note, respectively, were not executed until April 11, 1941, and January 22, 1942, *after* the charter of the Empire Printing Company had been forfeited on January 1, 1941, the trustees had no legal right to retain possession of the mortgaged property and use it in carrying on the business of the corporation, in view of the provisions of Sec. 5094, R. S. 1939, Mo. R. S. A.; Laws Mo. 1943, Sec. 174, p. 491. Under that statute the trustees had no power to carry on the printing business of the corporation from the date of the forfeiture, but only to wind up its affairs, paying its debts and collecting and distributing its assets. Our decisions so hold: Leibson v. Henry, 356 Mo. 953, 957-8, 962(5), 204 SW. (2d) 310, 313, 316(7).

Respondent Jacques' last contention on this point is that Segelbohm's failure to sell or foreclose the mortgaged property amounted to a conversion thereof per se.[6] In this case the chattel mortgage provided that in event of default in the payment of any installment due on the note, the mortgagee could "take possession of said property" and "sell the same in any manner he shall think fit." Here, Segelbohm the mortgagee permitted the trustees to retain and use the property in the printing business for nearly five years and then took it by stipulation with the trustees in his replevin suit in March, 1946, and still had it when this garnishment suit was filed on October 27, 1948. His excuse for holding it was that he couldn't sell it for an acceptable figure. We hold the facts here bring this case within the decisions just cited.[6]

Next the appellant executors assert that since Segelbohm recovered the printing equipment of the Empire Printing Company in his replevin suit based on his chattel mortgage, by a stipulated judgment against the Goggins, its trustees, his title to the property became res judicata, and he no longer was a debtor of the corporation or its trustees in any view. Consequently appellants maintain he and his

---

[5] Standard Computing Scale Co. v. Adam, 287 Fed. 347, 349(2); In re Coombs, 37 Fed. Supp. 495(3); United States Hoffman Machinery Corp. v. Lauchli, 150 Fed. (2d) 301, 303(7-9); Wilson v. Milligan, 75 Mo. 41, 42; Ozark Acceptance Corp. v. Yellow Truck & Coach Mfg. Co. (Mo. App.) 137 SW. (2d) 965, 969; Brunswick-Balke-Collender Co. v. Kraus, 132 Mo. App. 328, 332(2), 112 SW. 20, 21-2.

[6] Southern Mo. Trust Co. v. Crow (Mo. App.) 272 SW. 1040, 1041(2); Simpson v. Bantley Realty Co., 142 Mo. App. 490, 497(5), 126 SW. 999, 1001(5).

estate are not subject to garnishment in this proceeding as a debtor of the Empire Printing Company.

Respondent Jacques answers that he was not a party to Segelbohm's replevin suit or in privity with the parties to the judgment therein, and that he acquired his rights prior thereto. Consequently he maintains he can attack the judgment collaterally for fraud in its procurement. We think this is true.[7] His suit in unlawful detainer was filed October 11, 1945, and judgment was rendered therein in due course for $9330.54 on February 15, 1946. Segelbohm's replevin suit was filed January 14, 1946 and an early trial requested, evidently in an effort to circumvent Jacques. Judgment by agreement for possession of the property was entered on March 12, 1946. This was 28 days after the rendition of the Jacques judgment. There was good reason to believe the Printing Company was embarrassed financially. Obviously the trustees and Segelbohm both knew it.

The appellant garnishees' next point is that respondent Jacques' lease of the building to the Empire Printing Company, a corporation, was void, on the following theory. The lease was dated August 31, 1940 and ran five years beginning October 1, 1940. That year the corporation failed to make certain annual reports to the Secretary of State, as required by Sec. 5087, R. S. 1939, Mo. R. S. A. Under the statute these reports were due on July 1, and under Sec. 5091 became delinquent on December 31, resulting in the forfeiture of its corporate rights. The Secretary of State did forfeit its charter on January 1, 1941 and under Sec. 5094 it could no longer engage in business, and its officers and directors became trustees to liquidate it.

In the interval between July 1 and December 31, 1940, the foregoing lease was made. Appellants contend the lease was valid only for that six months, and that when that period had expired without the statutory reports being filed, the lease became void. The only decision cited by appellants is Luther v. Kinion, 200 Mo. App. 159, 202 SW. 589. We are unable to see that it is in point, or even bears on the question here.

On the other hand it was held in Sager v. State Highway Commission (Mo. App.) 125 SW. (2d) 89, 91(3): "It does not follow however that all incompleted acts or obligations of the corporation terminate when its charter is forfeited. In one sense the corporation may be said to be dead when its charter expires or is forfeited but there are many things about a corporation and a corporation's powers which do not die or terminate when its charter is forfeited." The decision cites Annotations in 47 A. L. R. 1288 and 97 A. L. R. 477. And it was

---

[7]Restatement, Law of Judgments, p. 450, Sec. 91; Myers v. Miller, 55 Mo. App. 338, 344(1); Abington v. Townsend, 271 Mo. 602, 615-6(6), 197 SW. 253, 256(6); McIntyre v. St. L. & S. F. Ry. Co., 286 Mo. 234, 246(3), 227 SW. 1047, 1050(2); Reger v. Reger, 316 Mo. 1310, 1333(4), 293 SW. 414, 423(9).

1018

pointed out in Wyoming-Indiana Oil & Gas Co. v. Weston, 43 Wyo. 526, 538-9 (5, 6), 7 Pac. (2d) 206, 210(4), 80 A. L. R. 1037, 1044, citing 8 Thompson on Corporations (3 Ed.) § 6514, p. 702, that "the obligations of a corporation to perform the conditions of a █ lease were held not extinguished by its dissolution, in the absence of a provision to that effect." We rule this point against appellants.

█ Appellants' last point is that the verdict and judgment for $9500 was excessive. Respondent's judgment in the unlawful detainer suit was for $9330.50 with 6% interest from February 15, 1946. The interest then amounted to $1912, making his total claim $11,243.25. An expert witness for respondent appraised the value of the printing equipment at $10,345. A witness for appellant thought it was "possibly $8000." In his replevin suit Segelbohm's petition had valued it at $8500. In his deposition in a replevin suit taken in August, 1947 he testified the defendant Goggins had offered to give him a mortgage on the equipment for $10,000. And he said he had been offered $12,000 for it "last week", but that he could not give possession. Under this testimony we cannot sustain appellants' contention that the judgment was excessive.

Appellants' reply brief reiterates several contentions made in their main brief, and urges several propositions of general law with a citation for each. But we cannot extend this opinion by discussing them. The verdict and judgment below are affirmed. All concur.

