**VITTERT CONSTRUCTION AND INVESTMENT COMPANY, Plaintiff,**

v.

**WALL COVERING CONTRACTORS, INC.,**
a corporation, et al., Defendants,

Charles W. Clark and Harold L. Clark, copartners, d/b/a Clark Painting Company, Defendants-Appellants,

Brod-Dugan Company, a corporation, Defendant-Respondent,

United States of America and Edwin P. Trainor, District Director of Internal Revenue, St. Louis, Missouri, Defendants-Appellants.

Nos. 33919, 33977.

St. Louis Court of Appeals, Missouri.

Sept. 28, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 29, 1971 in No. 33919.

Daniel Bartlett, Jr., United States Attorney, James M. Gordon, Asst. U. S. Atty., St. Louis, Johnnie M. Walters, Asst. Atty. Gen., Fred B. Ugast, Acting Asst. Atty. Gen., Tax Div., Bennett Hollander, John A. Townsend, Attys., Tax Div., Joseph M. Howard, Acting Chief, Meyer Rothwacks, Chief, Appellate Section, U S. Dept. of Justice, Washington, D. C., for defendant-appellant United States.

WOLFE, Judge.

This is an action on a petition in interpleader filed by the Vittert Construction and Investment Company. This company was indebted to Wall Covering Contractors, Inc., in the sum of $4,246.44. It had received notices from two companies named as defendants in this action, each claiming that a part of the sum owing by the plaintiff had been assigned to them. Another named defendant had a judgment against Wall Covering Contractors, Inc. and had run a garnishment in aid of execution against the plaintiff for the amount of its judgment. The United States of America had filed a tax lien against Wall Covering Contractors, Inc., and the District Director of Revenue was made a party defendant.

The court entered an order restraining the judgment creditor from further proceeding on its garnishment. It restrained all of the defendants from making any claim in other actions in relation to the sum owed by the plaintiff to Wall Covering Contractors, Inc. It allowed the plaintiff attorney's fees and costs out of the $4,246.44 that it owed and directed that the balance of $3,791.44 be paid into the registry of the court. Proceedings and hearing thereafter were held to determine the rights of the parties named. At the conclusion of the hearing the court made an order of distribution of funds. Two of the named defendants, United States of America and Charles W. and Harold L. Clark, d/b/a Clark Painting Company, have appealed.

W. Layton Stewart, St. Louis, for plaintiff.

Charles S. Sigoloff, Sidney Rubin, St. Louis, for defendants.

Jack F. Allen, Clayton, for defendant-appellant Clark.

Shifrin, Treiman, Schermer & Gallop, Richard H. Ulrich, St. Louis, for defendant-respondent.

All claimants to the fund, paid into the registry of the court, appeared by counsel at a pre-trial conference. It was there agreed and stipulated between the parties that the allowance of attorney's fees and costs to the plaintiff in the total sum of $455.00 should be made, thus reducing the sum for distribution to $3,791.44. It was also stipulated and agreed by all parties that the Universal Accounts Company, a defendant, had a claim paramount to all other defendants in the amount of $2,044.88 on the sum to be distributed. This left a balance in the registry of the court of $1,746.56 with three claimants contending for it.

One of these claimants is the partnership of Charles W. and Harold L. Clark, d/b/a Clark Painting Company. The claim they assert is predicated upon an assignment of accounts by Wall Covering Contractors, Inc.

Another claimant is Brod-Dugan Company which had the judgment against Wall Covering Contractors, Inc. and had served a garnishment in aid of execution on Vittert Construction and Investment Company, plaintiff-intervenor.

The last of the three remaining claims is that of the United States of America which had filed tax liens in the sum of $10,096.69 plus interest against Wall Covering Contractors, Inc.

The court found that the claim of the Clark Painting Company was subordinate to the claim of Brod-Dugan, the judgment creditor, and subordinate to the claim of the United States of America. The part of its decree relevant to the appeal before us is as follows:

"1. That the cost of this action shall be satisfied from the funds now in the registry of the Court.

"2. Defendant Brod-Dugan is entitled to be paid the sum of $844.54 from the funds in the registry of the Court.

"3. The United States of America is entitled to receive the balance of the fund of $1,746.56 now in the registry of Court after deducting the sums provided in paragraph 1 and 2 hereof."

As stated, Clark Painting Company has appealed from the decree and the United States of America also has appealed. Brod-Dugan, the judgment creditor, is here as a respondent.

We shall first consider the appeal of Clark Painting Company. There was in evidence by answer to interrogatories propounded to defendant Clark the following document:

### "AGREEMENT

"THIS AGREEMENT made April 10, 1967, between Wall Covering Contractors, Inc., hereinafter called 'Seller' and Charles W. Clark and Harold L. Clark, partners doing business as Clark Painting Company, hereinafter called 'Purchaser.'

"1. Seller agrees to sell and purchaser agrees to purchase the accounts receivable of Seller listed on Schedule A attached hereto and made a part hereof. The agreed sale price is $5,101.44.

"2. Purchaser agrees to assume the risk pertaining to all of said accounts receivable and Purchaser shall be deemed the owner of all of said accounts sold by Seller to Purchaser.

"3. Seller represents and warrants that each account is based upon an actual sale and delivery of merchandise or service, that the customer is liable for the payment of the amount stated in the invoice according to its terms without offset, defense or counterclaim. Seller agrees to indemnify and protect Purchaser against liability, loss or expense caused by or arising out of the rejection of the goods or alleged claims, defenses or offsets of every kind other than those resulting from financial inability to pay.

"4. Seller and purchaser agree that all customers of the Seller, included in the aforesaid accounts receivable, shall be notified of the sale of the accounts receivable to Purchaser and that all payments due under said accounts shall be made direct to Purchaser.

"5. Purchaser agrees that if Purchaser collects more than $5,300.00 on the aforesaid accounts receivable sold by Seller to Purchaser, after deducting all collection costs, including but not limited to attorneys' fees and court costs, that it shall pay over any excess amounts to or for the benefit of the Seller as follows:

"(a) On direction of Seller, to pay any excess amounts to the Internal Revenue Service, U. S. Treasury Department, to apply on any Federal Tax due by the Seller.

"(b) On direction of Seller to pay any excess amounts to the State of Missouri to apply on any State Tax due by the Seller.

"(c) The remainder, if any, to Seller.

"IN WITNESS WHEREOF, the parties have signed this agreement this 10th day of April, 1967.

"WALL COVERING CONTRACTORS, Inc., Seller

By /s/ William H. Clodfelter
       Its President

/s/ Charles E. Sykes
      Its Secretary

CLARK PAINTING COMPANY, A Partnership, Purchaser

By /s/ Charles W. Clark
      Partner."

The exhibit attached to the agreement listed 37 accounts totaling in amount $10,301.-76. Two of the accounts assigned were accounts owing to Wall Covering Contractors, Inc. by Vittert Construction and Investment Company, intervenor.

It is upon the foregoing agreement that Clark Painting Company claims a lien superior to the claim of the United States for taxes and the claim of Brod-Dugan, the judgment creditor. The court heard evidence at the request of Brod-Dugan and William H. Clodfelter, president of Wall Covering Contractors, Inc., was called as a witness. Clodfelter testified that during the year 1966 his company was in financial difficulties because its accounts outstanding for payment were not being paid in sufficient quantity to meet expenses. After consulting with an attorney he was advised to go to Universal Accounts Company which engaged in factoring accounts. He did this and assigned part of the accounts owing by plaintiff-intervenor to the factoring company. As stated above, this assignment was given first priority upon the money paid by intervenor into court by agreement of all parties.

At some time in January or February of 1967, William Clark of the Clark Painting Company talked to him about the financial problems of Wall Covering Contractors, Inc. and told Clodfelter that he thought that he could help him out and spoke of buying his company. He stated that thereafter, on April 12, 1967, he reached an agreement with the Clarks that Wall Covering Contractors, Inc. would operate as a separate unit of the Clark Painting Company and would work out of Clark's place of business, paying $25.00 a month rent. Wall Covering Contractors, Inc. moved into Clark's place of business with the understanding that the Clarks were to handle the financial end of the business and as payments on accounts came in, Clark would forward to Universal Accounts payments from accounts that had previously been factored with them and place the remainder in a special fund to meet Wall Covering Contractors' current expenses and repay Clark for any advances made.

Clark advanced enough money, the amount is unspecified, to Wall Covering to meet a payroll. The written agreement

set out above was entered into sometime in May and it had been back-dated to April 10. After executing the agreement Clodfelter, who had access to the files of Vittert Construction and Investment Company, was asked by Clark to slip a notice of the assignment into the files in order to avoid discovery of the back-dating of the assignment thus leaving the impression that the notice had been received by Vittert at an earlier date. Clodfelter stated that he refused to do this but at some. time between May 15 and May 20 he sent out notices of the assignments to all those whose accounts had been assigned to Clark. After Clodfelter had moved his company to the Clark Painting Company establishment, Clark kept separate books of payments made on accounts and Clodfelter worked for Clark Painting Company for about four months and then left. Clark Painting Company put on no evidence in rebuttal.

The court found that Clark did not file a financing statement pursuant to § 400.9–102(1) (a), (b), RSMo, V.A.M.S., and concluded as a matter of law that the failure of Clark to file a financing statement made their claim subordinate to other claims. The two sections cited by the court are a part of the uniform commercial code adopted by the State of Missouri. This code requires the filing with the recorder of deeds of a financing statement to perfect the security interests in collateral in possession of the secured party. Clark filed none. Section 400.9–102(1) (a), (b), RSMo, V.A.M.S. This section states that the article applies

"(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and also

"(b) to any sale of accounts, contract rights or chattel paper."

It is the contention of Clark that it does not come under the sections set out above because the transaction came under an exclusion contained in § 400.9–104(f), RSMo, V.A.M.S., which is as follows:

"(f) to a sale of accounts, contract rights or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts, contract rights or chattel paper which is for the purpose of collection only, or a transfer of a contract right to an assignee who is also to do the performance under the contract."

Appellants Clark state that the agreement between them and Wall Covering Contractors, Inc. was either an assignment for collection only or a transfer as part of the sale of the business out of which the accounts arose. We do not so construe the agreement reached. As stated by Clodfelter, his company was charged $25.00 a month rent and he went out of business shortly after the agreement was reached. This negates the concept of sale of the business. If the assignment was for collection only, then Clark had no beneficial interests higher than that of the assignor who admittedly was indebted on the judgment and the tax lien.

We are cited to Spurlin v. Sloan, Ky. App., 368 S.W.2d 314; United States of America v. Mercury Motor Express, Inc., D.C., 294 F.Supp. 919; Lyon v. Ty-Wood Corporation, 212 Pa.Super. 69, 239 A.2d 819; and Abramson v. Printer's Bindery, Inc., Tex.Civ.App., 440 S.W.2d 326. None of these cases persuade us to accept appellants' theory. All are readily distinguishable on facts and bear no analogy to the case here considered.

Appellants state that we should disregard the evidence of Clodfelter, but it was received without objection and from it and the written agreement it is evident that advances of money were made by Clark to finance Wall Covering. The appellant Clark Painting Company states in

its brief, " * * * if the truth is ever completely known, Clark and Wall Covering in no way attempted to effect a 'commercial financing transaction.'" Clark, of course, had the opportunity to present evidence but he put on none. It was Clark's burden to prove the substance of his claim. We hold that the trial court properly found Clark's claim subordinate to all others.

We now consider the contention of the United States that it has a lien on the fund superior to the garnishment of Brod-Dugan, the judgment creditor. On April 26, 1967, Brod-Dugan caused garnishment to be served on Vittert Construction and Investment Company, plaintiff-intervenor here. This garnishment as stated, was on Brod-Dugan's judgment against Wall Covering Contractors, Inc. On May 24, 1967, the tax lien by the government was filed.

The *Internal Revenue Code, 26 U.S.C.A.* § 6321, provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. * *."

Section 6323, following, provides that the lien imposed by § 6321 shall not be valid against a judgment lien creditor until notice of the lien is filed as provided in § 6323(f).

■ It is evident that the garnishment was served prior to the tax lien. The only issue presented by the government is whether the service of a garnishment in aid of execution creates a perfected lien under Missouri law upon an indebtedness owing to a judgment debtor. If such a lien is created the judgment creditor-garnisher would be a "judgment lien creditor" entitled to a priority over the federal tax lien filed after service of the garnishment

summons. If on the other hand no lien is created by the service of the garnishment summons, the federal tax lien would take priority and the United States would be entitled to prevail.

This court has previously passed upon the question presented in Weiner v. Shredded Steel Products, Inc., Mo.App., 334 S.W.2d 390. We held that the service of the writ of garnishment created a lien upon money garnished that could not be impaired by subsequent action by others for the same fund. Garnishment on indebtedness has the effect of seizure. Ivy v. La Rue, Mo.App., 158 S.W.2d 232. Like holdings may be found in Fulkerson v. Laird, Mo.App., 421 S.W.2d 523 and Barnes v. Hilton, Mo.App., 323 S.W.2d 831. These last two cases are by the Springfield and Kansas City Courts of Appeals, respectively.

Appellants contend that the Appeals Courts are in conflict with the Supreme Court of Missouri and cite us to McGarry v. Lewis Coal Co., 93 Mo. 237, 6 S.W. 81; Calumet Paper Co. v. Haskell Show Printing Co., 144 Mo. 331, 45 S.W. 1115; State ex rel. Rabiste v. Southern, 300 Mo. 417, 254 S.W. 166 and Jacques v. Goggin, 362 Mo. 1005, 245 S.W.2d 904. These are distinguishable because they all deal with tangible property which can be physically seized while the matter before us relates to intangibles not subject to actual physical seizure.

■ We do not find our holdings in conflict with the Missouri Supreme Court and we re-affirm that the service of the garnishment upon garnishee imposes a lien upon a debt owing to a judgment debtor. For these reasons we hold that Brod-Dugan had a judgment lien and that it was a lien superior to that of the United States Government in that it attached prior to the filing of the government's lien.

Judgment is affirmed.

BRADY, P. J., and JAMES RUDDY, Special Judge, concur.