**M. R. DUGAN, d/b/a M. R. Dugan Auction Company,**

v.

**MISSOURI NEON & PLASTIC ADVERTISING COMPANY and Tubelite Company, Inc., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**ALL–TEMP, INC., a corporation, Plaintiff-Appellee,**

v.

**Lloyd WILLIAMS, d/b/a Williams Heating and Plumbing Company, Defendant,**

v.

**RALPH E. BOYER, CONTRACTOR, INC., a corporation, Garnishee-Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, DEPARTMENT OF the TREASURY OF the UNITED STATES of America, Defendant-Appellant, and Lloyd Williams et al., Defendants.**

Nos. 72–1177, 72–1230.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 4, 1972.

Decided Feb. 6, 1973.

tax lien. In the *All-Temp* case,[2] the Honorable James H. Meredith, granted priority to the judgment lien creditor. These cases were heard and submitted separately, but since they involve a common legal question, both cases are considered in this opinion.

The essential factual circumstances in both cases are nearly identical. A brief background of each case is set forth with any important factual differences noted.

### DUGAN

This interpleader action was filed directly in the United States District Court for the Western District of Missouri, pursuant to 28 U.S.C. § 1335. Dugan, an auctioneer, paid into court the sum of $6,274.03, representing the net proceeds from an auction of equipment owned by Told Brothers Sign Company, Inc.[3] These proceeds were claimed by the United States to satisfy tax liens and by Tubelite Company, Inc., a judgment creditor of Told Brothers.

In May 1970 Tubelite filed suit against Told Brothers in the state court and obtained a default judgment on October 2, 1970. On June 5, 1970, United States made an assessment for withholding taxes against Told Brothers and filed a tax lien notice on August 19, 1970. The United States made a second assessment against Told Brothers on October 2, 1970.

On October 15, 1970, Dugan, the auctioneer, auctioned at public sale tangible property owned by Told Brothers and received therefor gross proceeds in the amount of $7,081.75 in the form of cash and checks. Of this amount Dugan was entitled to receive varying commissions, 10 per cent on small items sold and 5 per cent on trucks. Immediately after the auction, Dugan was served with a

James B. Fleischaker, Joplin, Mo., for appellant in No. 72–1177.

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for appellee in No. 72–1177.

Karl Schmeidler, Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellant in No. 72–1230.

Lewis Blanton, Sikeston, Mo., for appellee in No. 72–1230.

Before MATTHES, Chief Judge, and GIBSON and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

These cases present questions of lien priorities reaching for limited assets. At issue is the priority of a garnishment summons issued in aid of execution of a judgment as against a federal tax lien. In the *Dugan* case,[1] the District Court, the Honorable William R. Collinson, granted priority to the federal

---

1. Dugan v. Missouri Neon & Plastic Advertising Company, 334 F.Supp. 1222 (W.D.Mo.1971).

2. All-Temp, Inc. v. Williams, etc. v. Internal Revenue Service, 341 F.Supp. 872 (E.D.Mo.1972).

3. Missouri Neon & Plastic Advertising Company is a claimant as the sole stockholder of Told Brothers, Inc. Missouri Neon failed to plead and our decision makes any further reference to it unnecessary.

summons of garnishment in aid of execution of Tubelite's judgment in which the sheriff did "attach, levy upon and seize . . . all debts owing . . . to . . . Told Brothers, Inc. together with all personal property, money, . . . drafts, checks, and other choses in action" to the extent of $4,421.92 plus costs of execution and sheriff's fees. This writ of garnishment is shown to have been executed on October 15, 1970, at 12:30 a. m.

Dugan deposited the sum of $6,274.03 into court (net proceeds of the auction less commission and expenses) and requested an allowance of costs and attorney's fees. Tubelite claimed the amount of its judgment, $4,421.92, with interest from date of garnishment, October 15, 1970. The United States claimed $3,065.78 plus interest and penalties under its tax lien of August 19, 1970, and $2,391.66 plus interest and penalties under its tax lien of November 20, 1970.

Tubelite conceded that the United States was entitled to the moneys due under its original tax lien notice filed on August 19, 1970, but claims a priority over the second tax lien notice filed on November 20, 1970, on the ground that it was a judgment lien creditor for the balance of the auction proceeds prior to the filing of notice of the second tax lien. The District Court held that Tubelite Company was not a judgment lien creditor within the meaning of 26 U.S.C. § 6323(a) prior to the filing of the federal tax lien notice. The basis of the District Court's decision rested on the conclusion that the service of garnishment summons served upon the garnishee auctioneer does not create a lien upon specific property under Missouri law until the property comes into possession of the sheriff. Since the sheriff did not take possession of specific property, namely the checks and cash held by the auctioneer, no judgment lien was established under Missouri law, nor was an equitable lien created.

## ALL-TEMP

This interpleader action was commenced in the state court and removed to the United States District Court for the Eastern District of Missouri under 28 U.S.C. § 1444. The plaintiff-appellee, All-Temp, Inc., held a judgment against Lloyd Williams for over $15,000, which was entered on May 9, 1969. A summons in aid of execution on the judgment was issued on November 20, 1969, against garnishee Ralph E. Boyer, who owed Williams $3,770.27 on a contract indebtedness. Williams owed the United States some $5,700 for delinquent withholding of income and F.I.C.A. taxes, which had been assessed at various times, and proper notices of federal tax liens had been filed with the recorder of deeds for Scott County, Missouri, on December 11, 1969, and on February 21, 1970. The Government served a notice of levy on Boyer on March 20, 1970.

Williams filed a voluntary petition in bankruptcy and was adjudged bankrupt on March 30, 1970. Boyer, after the competing demands by creditors of Williams, filed an interpleader which was accepted by the court, thus allowing the corpus of the debt to be paid into court; whereupon the garnishee Boyer was discharged and allowed $300 attorney's fees. The summons of garnishment in aid of execution antedated both the notice of federal tax liens filed in the recorder's office and the service of notice of the levy upon the garnishee Boyer.

Relying on § 6323(a), Ferneau v. Armour & Co., 303 S.W.2d 161 (Mo.App. 1957), and United States v. 52.11 Acres of Land in St. Charles County, Mo., 73 F.Supp. 820 (E.D.Mo.1947),[4] the District Court held that All-Temp's garnishment summons in aid of execution created a lien superior to the tax lien.

---

4. *Ferneau* involved a garnishment in aid of execution of a judgment for alimony and child support, while *52.11 Acres of Land* involved the same issue at hand, but did not fully discuss why a garnishment summons in aid of execution takes priority over a tax lien.

## LEGAL ISSUES

1. In *Dugan,* the Government first argues that this Court lacks jurisdiction due to the failure of the appellant to comply with Rule 4 of the Federal Rules of Appellate Procedure. The District Court entered judgment in this case on November 29, 1971, and since the Government is a party to this suit, the appellant would normally have had 60 days in which to file a notice of appeal to this Court. On February 15, 1972, the District Court granted an extension of 30 days from the expiration of the original time for the appellant to appeal. The appellant filed his notice of appeal on February 22, 1972, within the extended time.

The appellant's counsel said that he first decided not to appeal because the decisions of the Missouri courts on the nature of a garnishment summons were not definitive. However, after he became aware through publication of the favorable decision of Vittert Const. & Inv. Co. v. Wall Covering Contr., Inc., 473 S.W.2d 799 (Mo.App. 1971) (published January 25, 1972),[5] he took the necessary steps to appeal. Under the totality of the circumstances of this case, we think that the appellant demonstrated "excusable neglect" under Rule 4 and was entitled to the extension of time granted by the District Court. Although generally failure to learn of the entry of judgment constitutes the major reason for excusable neglect, the District Court does have the power to grant extensions in extraordinary cases so that injustice may be avoided. Winchell v. Lortscher, 377 F.2d 247, 252 (8th Cir. 1967). Because of the timing of the decision in *Vittert Construction* and *Dugan,* the close similarity of the two cases, the importance of the similar issues, and the fact that the Government was a party to both cases, we think that the District Court did not err in its discretion in finding "excusable neglect" and allowing the extension of time for appeal.

2. The United States tax lien attached on the funds and property in question at the time of assessment by virtue of 26 U.S.C. § 6321.[6] The assessment and demand for payment by the United States is the operative fact creating the lien, but this lien is not valid as against other lienholders and does not defeat other lienholders' interests until notice thereof has been filed in accordance with 26 U.S.C. § 6323(a), which in pertinent part provides:

> "The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate."[7]

The only significant difference in the factual situation of the two cases is that the parties conceded in *All-Temp* that the property attached and garnisheed was an intangible, namely the contract debt Boyer owed Williams, whereas, in *Dugan,* the parties' conceptual view of the transaction differs. The Government in *Dugan* viewed the property sought to be attached or garnished as the drafts, checks, or cash in the hands of the auctioneer, while the appellant Tubelite viewed the attachment and garnishment as reaching the debt that Dugan owed Told Brothers resulting from

5. Neither District Court had the advantage of the *Vittert* case, which dealt with the precise nature and characteristics of a garnishment summons issued in aid of execution of a judgment.

6. "§ 6321. Lien for taxes.
   "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

7. Subsection (f) of § 6323 provides for filing the notice in the office designated by the state in which the property, tangible or intangible, is located.

the auction of Told Brothers' property. A debt of course would be classified as intangible personal property. If viewed as specific tangible property, admittedly the funds had not been reduced to possession by the Sheriff of Jasper County in accordance with the command of the Missouri statutes in creating a judgment creditor lien on tangible personal property.

The ultimate question as to whether or not a claimant becomes a judgment lien creditor within the meaning of 26 U.S.C. § 6323(a) is a federal question. However, in order to determine that question it is necessary to ascertain whether or not a lien is created under state law and, if so, the characteristics thereof. Aquilino v. United States, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L. Ed.2d 1365 (1960). In answering the question of whether a lien could attach to property, the Court in *Aquilino* said:

> "[B]oth federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . sought to be reached by the statute.' . . .
> Thus, as we held only two Terms ago, Section 3670 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law. . . .'
> . . . However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.'" (Citations and footnotes omitted). Aquilino v. United States, 363 U.S. 509, 512–514, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960).

The District Court, in *Dugan*, relying on State ex rel. Rabiste v. Southern, 300 Mo. 417, 254 S.W. 166 (1923); Jacques v. Goggin, 362 Mo. 1005, 245 S.W.2d 904 (1952); and United States v. Plez Lewis & Son, Inc., 272 F.Supp. 221 (E.D.Mo. 1967), held that a "garnishment summons does not create a lien upon specific property until it comes into the possession of the sheriff." Since Tubelite was held not to have a lien by the garnishment summons served in aid of execution of judgment, Tubelite was not a judgment *lien* creditor under § 6323(a).

The District Court in *Dugan*, however, did not have the advantage of a Missouri Appeals Court decision, Vittert Const. & Inv. Co. v. Wall Covering Contr., Inc., *supra*. Prior to *Vittert Construction* the Missouri law had not been precisely articulated on this point.[8]

*Vittert* held that the judgment creditor's service of garnishment in aid of execution created a perfected lien upon the indebtedness owed by the garnishee to the judgment debtor and that this lien was superior to a federal tax lien, the notice of which postdated the service of the garnishment summons. The Court reasoned in *Vittert* that the garnishment issued in aid of execution created a lien upon the debt owing to the judgment debtor that could not be impaired by subsequent action of others seeking the same fund and that the garnishment on indebtedness has the effect of seizure. That Court specifically held:

> "This court has previously passed upon the question presented in Weiner v. Shredded Steel Products, Inc., Mo. App., 334 S.W.2d 390. We held that the service of the writ of garnishment created a lien upon money garnished that could not be impaired by subsequent action by others for the same fund. Garnishment on indebtedness has the effect of seizure. Ivy v. La Rue, Mo.App., 158 S.W.2d 232. Like holdings may be found in Fulkerson v. Laird, Mo.App., 421 S.W.2d 523 and

---

8. The Missouri Supreme Court refused to review the Missouri Appeals Court decision in *Vittert Construction,* and thus *Vittert* is clearly the controlling law in Missouri.

Barnes v. Hilton, Mo.App., 323 S.W.2d 831. . . .

"Appellants contend that the Appeals Courts are in conflict with the Supreme Court of Missouri and cite us to McGarry v. Lewis Coal Co., 93 Mo. 237, 6 S.W. 81; Calumet Paper Co. v. Haskell Show Printing Co., 144 Mo. 331, 45 S.W. 1115; State ex rel. Rabiste v. Southern, 300 Mo. 417, 254 S.W. 166 and Jacques v. Goggin, 362 Mo. 1005, 245 S.W.2d 904. These are distinguishable because they all deal with tangible property which can be physicially seized while the matter before us relates to intangibles not subject to actual physical seizure." Vittert Const. & Inv. Co. v. Wall Covering Contr., Inc., *supra*, 473 S.W.2d at 804.

This leaves for consideration in *Dugan* the question of whether the asset sought to be sized by the judgment creditor Tubelite, was an intangible, in this case a debt, or tangible property, the specific checks and cash representing the auction proceeds held by Dugan. Of course as a practical matter the only way of reaching an intangible, such as a debt, is by way of a writ of garnishment, whereas a levy can be made by the sheriff upon specific tangible personal property by seizing the property itself.

■ We think in this case that the custom in the auction business and the practicalities involved in the relationship between the owner of the goods, auctioneer, and third parties would dictate the view that the proceeds of the auction, whether in the form of checks or cash, should be considered as a debt owed by the auctioneer to the owner of the property. The sheriff in this case could have seized the checks and cash. However, he could not have endorsed the checks, and also the seizure of the cash

could have exposed the sheriff to liability for an illegal seizure, as the auctioneer had a right to part of the proceeds for his commission and expenses and also had the legal obligation to recognize prior legal demands (in this case, the first government levy) made against this fund.

The Restatement on Agency comments that an auctioneer can commingle the auction proceeds and thereafter becomes an agent and a debtor to the principal. Restatement (Second) Agency § 398, Comment (c) (1957). It thus appears that we should not and Missouri law does not place an impossible burden upon the sheriff in executing a writ of garnishment by placing him in the difficult and awkward position of seizing checks that he cannot negotiate and seizing cash which he does not have the unqualified right to hold and apply in satisfaction of the execution. We think that the auction's proceeds constituted an intangible debt owed to the owner Told Brothers and that Tubelite's summons of garnishment in aid of execution created a perfected lien on the balance of the proceeds, making Tubelite a judgment lien creditor under Missouri law and entitled to be recognized as such under 26 U.S.C. § 6323(a).

■ We realize that the purpose of the federal tax lien statute is to insure the prompt and efficient collection of taxes and the question of competing priorities constitutes a federal question. United States v. Security Trust and Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950). Stated otherwise, a state cannot arbitrarily create priorities to defeat a federal tax lien, and the federal courts have employed the standard of requiring a competing lien to be perfected before according it a superior position to a subsequently filed federal tax lien.[9]

9. The priorities of the federal tax lien have been subject to much discussion and legislation. In 1966, Congress amended Section 6323, *inter alia*, to specifically

enumerate certain "superpriorities" under § 6323(b) and commercial financing transactions under §§ 6323(c) and (d) that defeat a federal tax lien. This latest

■■ Judicial developments have established criteria to determine whether a particular interest should have priority over a federal tax lien. In other words, a judgment creditor, though preferred by § 6323(a),[10] must have "attained the degree of perfection required of other liens and be choate for the purposes of the federal rule [of priority]." [11] United States v. Pioneer American Ins. Co., 374 U.S. 84, 89, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). In articulating the choateness doctrine, United States v. New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954), held that "liens may also be perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." [12] Tubelite satisfies all re-

quirements. First, Tubelite is clearly identified as the lienor, for it is both the judgment creditor and the garnisher. Second, as a judgment creditor, Tubelite does not have a definite interest in any specific personalty,[13] but, as a garnisher, the property subject to the lien is all the personal property in Dugan's possession that Dugan owes to Told Brothers. Third, the amount of the lien is Tubelite's judgment debt imposed upon and limited to the amount that Dugan owes Told Brothers.

It could be argued that, at the time of garnishing Dugan, the existence of a debt or the exact amount of the debt (the auction proceeds) was not definite, and, therefore, the lien was not choate. Something more, the appearance of the

amendment continues the Congressional broadening of those interests that take priority over a federal tax lien. Originally tax assessments were not made public, and the secret tax lien subordinated subsequent interests. However, in 1913, the notice-filing provision was adopted, and mortgagees, purchasers, and judgment creditors took priority unless a notice of lien was properly filed. Act of March 4, 1913, ch. 166, 37 Stat. 1016. In 1916, pledgees were given the same protection. Act of June 29, 1939, ch. 247, § 401, 53 Stat. 882 (1939). See Young, Priority of the Federal Tax Lien, 34 U.Chi.L. Rev. 723, 723 (1967).

10. The previous statute read: "[T]he lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, or judgment creditor until notice thereof has been filed. . . ." 68A Stat. 779 (1954). The addition of "lien" to "judgment creditor" makes more precise the type of judgment creditor protected but adds no new dimension, since courts have required that a judgment creditor must also have obtained a lien against specific property. This change is merely a statutory recognition of case law. E. g., United States v. Security Trust & Savings Bank, supra.

11. Professor Frank R. Kennedy attacks this position as not being the Congressional intention. Kennedy, From Spokane County to Vermont: The Compaign of the Federal Government Against the In-

choate Lien, 50 Iowa L.Rev. 724, 730–31 (1965).

12. These standards are a compilation from previous decisions. United States v. Knott, 298 U.S. 544, 56 S.Ct. 902, 80 L.Ed. 1321 (1936) (identity of lienor) ; United States v. Waddill, Holand & Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945) and Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348 (1946) (property subject to the lien) ; United States v. Waddill, Holland & Flinn, Inc., supra and United States v. Texas, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356 (1941) (the amount of the lien).

Congress intended that the New Britain standards should continue to apply to § 6323(a). The House Report states that "Under decisions of the Supreme Court a mortgagee, pledgee, or judgment creditor is protected at the time notice of the tax lien is filed if the identity of the lienor, the property subject to the lien, and the amount of the lien are all established at such time . . . [S]ubsection (a) of new section 6323 retains this basic rule of Federal law. . . ." H.R.Rep.No.1884, 89th Cong., 2d Sess. 35 (1966), U.S.Code Cong. & Admin.News 1966, p. 3722.

13. Mo.Rev.Stat. § 513.085 (1969) in part reads, "No execution prior to the levy thereof shall be a lien on any goods, chattels or other personal property. . . ."

garnishee in court and his admitting to a debt and the amount thereof, had to be done, and consequently the lien could be said to be inchoate. We would readily agree with this argument, if this case involved a garnisher who had not obtained a judgment.[14] However, Tubelite does have a valid judgment. The exact amount of the judgment is known and definite, and any amount of a garnishment serves to satisfy that judgment pro tanto.

■ The purpose of the choateness doctrine is to preclude a state from announcing that certain liens can attach at some arbitrary time prior to a federal tax lien. United States v. New Britain, *supra*, 347 U.S. at 86, 74 S.Ct. 367. Arbitrariness is not present in this case. Tubelite had been a judgment creditor before the delivering of the garnishment summons and had diligently garnisheed Dugan before the Government acted.[15] Further, as we have said above, Tubelite, by serving the garnishment summons, did all it could have done under state law to secure a lien on intangible property. Finally, *Security Trust, Liverpool* and United States v. Acri, 348 U. S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955), relied on by the Government, all involved non-judgment interests.

■ Therefore, a garnishment summons in aid of execution of a judgment and on intangible property creates a choate lien so as to entitle that garnisher to the status of a judgment lien creditor who takes priority against a subsequently filed federal tax lien.

The judgment in *Dugan* is reversed and judgment in *All-Temp* is affirmed.

14. In fact, United States v. Liverpool & London & Globe Ins. Co., Ltd., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955), would control, and this in fact would be true under Missouri law. *Vittert* only held that a garnishment in *aid of execution* creates a perfected lien and distinguished Missouri cases dealing with garnishment summons on tangible property that could be physically seized.

15. The common law rule for priority has long been the "first in time, first in right" rule. Rankin v. Scott, 25 (12 Wheat.) U.S. 177, 179, 6 L.Ed. 592 (1827).