## In re RIVERFRONT FOOD AND BEVERAGE CORP., Debtor.

### Curtis L. MANN, Trustee, Plaintiff,

v.

### ART BRITTON AUCTION SALES, LTD., Granite Sheet Metals, Works, Inc., United States of America Internal Revenue Service, Fehlig Brothers Box & Lumber Company and Valley Farm Dairy Company, Defendants.

Bankruptcy No. 81–02467(1).
Adv. No. 81–0650(1).

United States Bankruptcy Court,
E.D. Missouri, E.D.

April 21, 1983.

848

Curtis L. Mann, Clayton, Mo., trustee-plaintiff.

A. Thomas DeWoskin, Clayton, Mo., for trustee.

W. Dudley McCarter, Clayton, Mo., for defendant Granite Sheet Metals Works, Inc.

Robert H. Batts, Webster Groves, Mo., for defendant, Art Britton.

Donald B. Kramer, St. Louis, Mo., for Fehlig Brothers Box & Lumber Co.

Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., Ludwig H. Adams, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant, IRS.

W.G. Winkler, St. Louis, Mo., for Valley Farm Dairy Co.

## MEMORANDUM OPINION

ROBERT E. BRAUER, Bankruptcy Judge.

The Plaintiff Trustee filed a Complaint in two counts to recover for the estate approximately $10,499.80, being the net proceeds from an auction sale of Debtor's inventory conducted on August 24, 1981, by Defendant Art Britton Auction Sales, Ltd. (Britton). The Debtor filed a voluntary petition under Chapter 7 of Title 11, United States Code, on October 20, 1981.

In Count I of his Complaint, the Trustee asserts a priority interest in the auction proceeds superior to that of the remaining Defendants, Granite Sheet Metal Works, Inc. (Granite), United States of America Internal Revenue Service (IRS), Fehlig Brothers Box & Lumber Company (Fehlig), and Valley Farm Dairy Company (Valley Farm). In Count II of his Complaint, the Trustee seeks to avoid as preferential transfers under 11 U.S.C. § 547(b) the garnishment proceedings instituted by Granite, Fehlig, & Valley Farm. By order of this Court, dated February 8, 1982, enterd upon consent of the parties Britton turned over to the Trustee the net sale proceeds, to be invested and held pending a decision in this adversary cause. The Complaint was tried and submitted on April 5, 1982, with leave to the parties to file briefs thereafter.

## FINDINGS OF FACT

Prior to August 20, 1981, the Debtor Riverfront Food and Beverage Corp. turned over its inventory to Britton for sale at auction. On August 20, 1981, Granite, a judgment creditor of the Debtor in the amount of $24,338.63 plus interest and costs, caused an execution to issue in aid of satisfaction of its judgment and caused a Summons to Garnishee to be served on Britton. On August 21, 1981, the IRS filed a Notice of Tax Lien with the Recorder of Deeds in the City of St. Louis, Missouri, for unpaid taxes in the amount of $6526.26.[1] On August 24, 1981, Britton sold the Debtor's inventory at auction for a net sum of $10,499.80. On a date subsequent to September 2, 1981, but prior to the date of bankruptcy, Fehlig and Valley Farm, both judgment creditors of the Debtor, each caused an execution to issue and a Summons to Garnishee to be served on Britton. On or about October 15, 1981, the IRS caused a Notice of Levy, embracing unpaid

---

1. The Debtor was located in the City of St. Louis, Missouri. *See:* 26 U.S.C. § 6321; 26 U.S.C. § 6323(f)(1)(A)(ii); and Mo.Rev.Stat. § 14.010.

  The taxes embraced by this Notice are employment taxes due for the first, second and third quarters of 1980. The Notice does *not* embrace employment taxes for the fourth quarter of 1980. The Notice Of Levy, subsequently to be referred to in this opinion, embraces employment taxes due for all four quarters.

employment taxes, owed by the Debtor for each of the four quarters of 1980, to be served upon Robert H. Batts, an attorney at law, who at the time was counsel for the auctioneer; the Notice Of Levy was mailed to Mr. Batts, who subsequently notified the auctioneer of his receipt of the Notice. The Debtor filed its bankruptcy petition on October 20, 1981, as stated previously.

Neither Fehlig nor Valley Farm is contesting the Trustee's Complaint.[2] Granite, however, claims that service of its garnishment summons on Britton created a perfected lien on August 20, 1981, the date of service, and that its lien takes priority over the IRS' tax lien. Granite also claims that the lien created by its garnishment is a statutory lien which cannot be avoided by the Trustee because of the provisions of 11 U.S.C. § 547(c)(6).

The IRS asserts that its tax lien was perfected on August 21, 1981, and is prior in time to Granite's lien which the IRS asserts was not established, if at all, until August 24, 1981, the date of the auction. The IRS asserts, also, that its tax lien is a statutory lien that the Trustee cannot avoid. The IRS asserts also that by reason of its "service" of a Notice Of Levy, on or about October 15, 1981, a seizure of the auction-sale proceeds was effected, so that its claim for taxes, embraced by the Levy, cannot be subordinated or postponed, in distribution, by reason of the provisions of 11 U.S.C. § 724(b).

The Trustee contends that Granite's garnishment on the auctioneer created, on August 20, 1981, a perfected lien in favor of Granite that is prior in time and right to the tax lien of the IRS; that Granite's lien is a judicial lien avoidable by the Trustee as a preferential transfer pursuant to 11 U.S.C. § 547(b); and asserts that the avoided lien is to be preserved for the benefit of the estate, in derogation of the IRS tax lien, by reason of the provisions of 11 U.S.C. § 551.

## CONCLUSIONS OF LAW

■ Under Missouri law, service of a Summons to Garnishee does not create or perfect a lien in favor of a judgment creditor/garnishor on tangible personal property of a judgment debtor in the possession of the garnishee. Missouri law is clear on this point. If the property interest sought to be garnished is *intangible* personal property, e.g., an indebtedness owing to a judgment debtor, the service of a Summons to Garnishee creates a lien on the intangible personal property "held" by the Garnishee. *Vittert Construction and Investment Company v. Wall Covering Contractors, Inc.,* 473 S.W.2d 799, 804 (Mo.App.1971), *appeal denied* (Mo.1971); *Dugan v. Missouri Neon & Plastic Advertising Co.,* 472 F.2d 944 (8th Cir.1973).

If, however, the property interest sought to be garnished is *tangible* personal property, the service of a Summons to Garnishee does *not* create a lien upon the tangible personal property in the hands of the Garnishee unless and until it is seized by the sheriff. Mo.Rev.Stat. § 513.085 provides, "No execution prior to the levy thereof shall be a lien on any goods, chattels, or other personal property. . . ." The term "levy" is defined in Mo.Rev.Stat. § 513.-010(1) as "the actual seizure of property by the officer charged with the execution of the writ."

In construing Missouri statutory provisions on garnishment & attachment, substantially unchanged in current law, the Supreme Court of Missouri, in *McGarry v. Lewis Coal Company,* 93 Mo. 237, 240, 6 S.W. 81 (1887), held that a lien is not created in favor of a garnishor upon tangible and specific property of a judgment debtor in the hands of a garnishee, by virtue of the service of the garnishment process. The Court stated:

In general, it may be said that garnishment is a proceeding especially designed for the attachments of credits or debts due the defendant, and while it may be

---

2. Fehlig did not file an Answer to the Trustee's Complaint. Valley Farm, in its Answer, consents to "the granting of an Order directing Art

Britton Auction Sales, Ltd. to turn over the sum of $10,499.80 to Trustee."

employed with respect to tangible and specific property in the possession of a person other than the debtor, it is in these respects resorted to in order to avoid the responsibilities incident to the actual seizure and custody of the property. Often it is uncertain whether the third person has in his possession any property belonging to the defendant, or if it may belong to the defendant, with the right of possession in such third person. Garnishment is, as the term implies, a warning to the garnishee not to dispose of the property of the defendant in his hands, and that if he does so dispose of the same, he will subject himself to personal liability for the value, to the extent, at least, of the plaintiff's debt or claim.

Ordinarily property is not deemed to be in the custody of the law until actually seized and reduced into possession by the officer. *Under the law applicable to attachments, it is the levy by the officer that creates the lien.* If the plaintiff is not satisfied to look to the responsibility of the garnishee, he may apply to the court, or to the judge in vacation, and obtain an order upon the garnishee to deliver the property to the sheriff or into court, or the court may permit the garnishee to retain the property upon the execution of a bond to plaintiff with security. R.S., 1879, sec. 2524; *Bank of Missouri v. Bredow,* 31 Mo. 523. These provisions seem to have been regarded as affording ample protection. (Emphasis supplied) 93 Mo. 240–241, 6 S.W. 82. The property in *McGarry* was tangible personal property, a steam tugboat named the "Alice Parker." *Accord, State ex rel. Rabiste v. Southern,* 300 Mo. 417, 431, 254 S.W. 166, 170 (En banc 1923); *Calumet Paper Co. v. Haskell Show Printing Co.,* 144 Mo. 331, 340, 45 S.W. 1115, 1117 (1898).

When the St. Louis Court of Appeals in *Vittert, supra.,* held that garnishment on indebtedness has the effect of seizure and thus service of the writ of garnishment creates a lien upon a debt owing to a judgment debtor, the Court was careful to distinguish the aforementioned Missouri Supreme Court decisions "... because they all deal with tangible property which can be physically seized while the matter before us relates to intangibles not subject to actual physical seizure. We do not find our holdings in conflict with the Missouri Supreme Court." 473 S.W.2d at 804.

■ At the time Granite caused its Summons to Garnishee to be served on the auctioneer, the auctioneer was *not* indebted to the Debtor. The auctioneer had in its possession tangible personal property (inventory) belonging to the Debtor. Granite's garnishment may have triggered a potential personal liability of the auctioneer/garnishee, but it did not create a *lien* on this inventory. *McGarry, supra.* The auctioneer sold the Debtor's inventory on August 24, 1981. *On this date* the auctioneer became indebted to the Debtor, *and, on this date* a lien was created in favor of Granite upon the indebtedness owed by the auctioneer to the Debtor as a result of the garnishment served four days earlier. However, by that time, a perfected lien in favor of the IRS had come into existence superior to Granite's garnishment lien.

The IRS tax lien existed at and from the time the taxes embraced by the lien were assessed. 26 U.S.C. § 6321. However, the lien did not become perfected as against certain other lienholders, including a judgment lien creditor, until notice of the tax lien was filed in accordance with 26 U.S.C. § 6323(a). By filing a notice of tax lien with the Recorder of Deeds for the City of St. Louis, Missouri, on August 21, 1981, the IRS complied with the filing and notice requirements of 26 U.S.C. § 6323(f) and Mo.Rev.Stat. § 14.010, and a fully valid and perfected tax lien was in effect from that date forward.

A federal tax lien is a lien "... in favor of the United States upon *all* property and rights to property, whether *real or personal* ..." belonging to a delinquent taxpayer. (Emphasis added). 26 U.S.C. § 6321. A fully valid tax lien was thus perfected on August 21, 1981, in the Debtor's inventory held by Britton. This federal tax lien takes priority over Granite's subsequently created

(on August 24, 1981) garnishment lien. The amount of the federal tax lien, as established by the filing, with the Recorder of Deeds, of the notice of tax lien, is $6526.26. Additional tax assessments not filed in the office of the Recorder of Deeds prior to the creation of Granite's garnishment lien do *not* take priority over Granite's lien.

The Trustee, in his post-trial brief, concedes that the IRS has a statutory lien which is not avoidable by the Trustee as a preferential transfer. 11 U.S.C. § 547. The authorities support the Trustee's concession. A statutory lien is defined in 11 U.S.C. § 101(38) as follows:

> *"statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions,* or lien of distress for rent, whether or not statutory, *but does not include* security interest or *judicial lien, whether or not such* interest or *lien is provided by or is dependent on a statute* and whether or not such interest or lien is made fully effective by statute. (Emphasis supplied)

The legislative history contains further explanation. "A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples. Tax liens are also included in the definition of statutory lien." H.R.Rep. No. 595, 95th Cong., 1st Sess. 314, *reprinted in* [1978] U.S. Code Cong. & Ad.News 5787, 5963, 6271; S.Rep. No. 989, 95th Cong. 2d Sess. 27, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5787, 5813. *See also,* 2 *Collier on Bankruptcy* § 101.38 (15th ed. 1982).

Although a statutory lien falls within the broad Bankruptcy Code definition of "transfer", 11 U.S.C. § 101(40), statutory liens are specifically excepted from a Trustee's avoiding powers. 11 U.S.C. § 547(c)(6). A Trustee cannot avoid a fully valid federal tax lien as a preferential transfer.

Even so, as will be pointed out infra, the perfected IRS lien claim does *not* impede the Trustee's right to recover the auction sales proceeds for distribution in accordance with the provisions of Chapter 7 of the Bankruptcy Code. See 11 U.S.C. § 724(b).

■ Granite also claims that it holds a *statutory* lien not avoidable by the Trustee. However, Granite's lien is a judicial lien, not a statutory lien. A judicial lien is defined, for purposes of the Bankruptcy Code, in 11 U.S.C. § 101(27) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." Granite's garnishment lien falls squarely within the Bankruptcy Code definition of a judicial lien. A judicial lien falls within the Code definition of a "transfer", and, unlike a statutory lien, is not excepted from the Trustee's avoiding powers under 11 U.S.C. § 547. Therefore, if the other elements of a preferential transfer are proved, the Trustee may avoid Granite's judicial lien as a preferential transfer.

The Trustee established the five elements of a preferential transfer under 11 U.S.C. § 547(b) sufficient to avoid Granite's judicial lien: the creation of Granite's judicial lien constituted a transfer of the Debtor's property to or for the benefit of Granite, a judgment creditor, on account of the unsatisfied judgment granted in favor of Granite and against the Debtor in May, 1981; the transfer was made while the Debtor was insolvent (presumed under 11 U.S.C. § 547(f)) on or within ninety days before the filing of the Debtor's petition in Bankruptcy; the transfer, if not avoided, will enable Granite to receive more than it would receive if the transfer had not been made and Granite paid to the extent provided in Chapter 7 of Title 11 of the United States Code—as, the Trustee testified that unless he is successful in this adversary proceeding, the estate will not contain any assets for distribution to the Debtor's creditors, and Granite is not the only creditor of the Debtor. All elements of a preferential transfer having been established, I find that Granite's garnishment lien, created on August 24, 1981, is avoidable by the Plaintiff-Trustee.

Granite's judicial lien attaches to the balance of the auction proceeds remaining after the tax lien is satisfied, because the

judgment debt due and owing to Granite exceeds the amount of the remaining proceeds. Since the Trustee has avoided Granite's lien on the auction proceeds, the lien upon that remaining balance is preserved for the benefit of the bankruptcy estate, 11 U.S.C. § 551, and the Trustee is entitled to retain at least that portion of the auction-sales proceeds for distribution in accordance with the distributive provisions of Chapter 7.

Moreover, the Trustee is entitled to retain *all* of the proceeds of the auction sale for distribution in accordance with the provisions of said Chapter 7; as, 11 U.S.C. § 724(b) subordinates the distribution of so much of the auction sale proceeds, embraced by the IRS tax lien, to specific priority tax claims and expenses, unless a pre-petition seizure of the auction sale proceeds had been accomplished by the IRS so as to prevent those proceeds from becoming property of the estate.

The IRS contends that such a seizure was effected, by the "service" of a Notice Of Levy, by mailing such a Notice on or about October 15, 1981, to Robert H. Batts, an attorney at law, who at the time was counsel for Britton. Batts agreed with the IRS to the mailing to him of the Notice. The IRS relies upon *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975); *In re Pittsburgh Penguins Partners,* 598 F.2d 1299 (3 Cir., 1979), and *United States v. Eiland,* 223 F.2d 118 (4 Cir., 1955), each of which announces general principles of levy/seizure law of no particular benefit to the IRS here.

The Notice Of Levy was mailed to Batts at a time when Britton no longer was in possession of tangible personal property belonging to the Debtor, except as the sales proceeds (the cash) may be so considered. The record does not tell us that Britton then held the cash proceeds in specie or in some segregated form or condition. In any event, an actual seizure of cash was not made. The IRS, then, is counting upon a seizure, by the mailing of the Notice Of Levy, of an intangible, i.e., Britton's debt, to the Debtor, measured by the amount of the sales proceeds.

■ Intangibles may be effectively seized by the proper service of a Notice Of Levy, as explained in *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977):

> Levy upon tangible property normally is effected by service of forms of levy or notice of levy and physical seizure of the property. Where that is not feasible, the property is posted or tagged. Because intangible property is not susceptible of physical seizure, posting, or tagging, levy upon it is effected by serving the appropriate form upon the party holding the property or rights to property. 429 U.S. at 350, 97 S.Ct. at 627.

Treasury Regulation § 301.6331–1(a)(1), 26 CFR § 301.6331–1(a)(1) (1982) provides that "levy may be made by serving a notice of levy *on any person in possession of, or obligated with respect to,* property or rights to property subject to levy, including receivables, bank accounts, evidences of debt, securities, and salaries, wages, commissions, or other compensation." (emphasis added).

Here, the IRS did not serve its notice of levy on Britton, that is, the person "in possession of, or obligated with respect to, property or rights to property" of the Debtor-taxpayer. The IRS instead phoned Batts, and, with his permission/assent, mailed the Notice Of Levy to him (Batts). Batts subsequently notified Britton of his receipt of the Notice Of Levy. The IRS contends that this method of service of the Notice Of Levy was sufficient to effect a valid levy and seizure of the Britton's indebtedness to the Debtor. The IRS states, in its post-trial brief, that this method of service was "somewhat unusual" but cites no precedent providing for or supporting this method of service of a Notice Of Levy.

Batts obviously is not a "person in possession of or obligated with respect of property or rights to property subject to levy" within the meaning of the appropriate Treasury Regulation. When he received the Notice Of Levy, he was at most an agent for limited purposes. The scope of that agency is not delineated in this record. It is my

judgment that that agency did *not* extend to bind his principal, Britton, by the receipt of that Notice.

■ Levy, and seizure, is a summary remedy, which gives rise to rights in respect of a res, the property seized, not theretofore in existence. It should be accomplished only in strict compliance with the regulations and law that permit of that summary remedy. In that respect, it is not unlike a notice of garnishment which, to confer jurisdiction of the issuing court over the res (in the garnishee's possession), must be served in strict compliance with the requirements of the statutes. See *C. Rallo Contracting Co., Inc., v. Blong et al.,* 313 S.W.2d 734 (Mo.App., 1958).

■ Even under the notice requirements, of the Federal Rules of Civil Procedure, in respect of the service of process, an attorney is generally not an agent authorized to receive such service of process, unless he is expressly or impliedly authorized by his client to do so. *Ransom v. Brennan,* 437 F.2d 513, 518 (5 Cir., 1971), cert. den. 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); *Miree v. United States,* 490 F.Supp. 768, 775 (N.D.Ga., 1980); *Christensson v. Hogdal,* 199 F.2d 402, 404 (D.C.Cir., 1952). "The rule is clear that it must appear that any agent who accepts service must be shown to have been authorized to bind his principal by the acceptance of process and, further, that the authority to accept such service cannot be shown by the extra-judicial statements of the attorney. This is an elementary law of agency." *Schwarz v. Thomas,* 222 F.2d 305, 308 (D.C.Cir.1955). Representations by an agent that he has authority to receive process or the fact that an agent actually accepts service is not enough to bind a defendant. *Christensson, supra.; Eads v. Garcia & Diaz, Inc.,* 17 F.R.D. 317, 318 (S.D.N.Y.1955); *Goetz v. Interlake S.S. Co.,* 47 F.2d 753, 757 (S.D.N.Y.1931).

■ Mailing the Notice Of Levy to Batts was not sufficient, in my judgment, to constitute a valid levy and seizure of Debtor's property in the hands of Britton. There-fore, the IRS must count upon its perfected tax lien only, to defend against the Trustee's Complaint. And, as previously shown, because of the provisions of 11 U.S.C. § 724(b), supra, the defense is ineffective. The Trustee is entitled to retain *all* of the proceeds of the auction sale for distribution in accordance with the distributive provisions of Chapter 7.

■ Counsel for Britton has requested, on behalf of his client, an award of attorney fees. Here, Britton, although named as a Defendant, assumed much the same role as an interpleading Plaintiff, claiming no interest in the funds but seeking the Court's direction as to a proper distribution thereof. An allowance of attorney fees to an interpleading stakeholder is generally within the discretion of the trial court. *Aetna Life Insurance Co. v. Harley,* 365 F.Supp. 1210 (N.D.Ga.1973); *National Life & Accident Insurance Co. v. Bruce,* 309 F.Supp. 1314 (W.D.Mo.1970). *Spinks v. Jones,* 499 F.2d 339 (5th Cir.1974), cited by the IRS, does not preclude an award of attorney fees here. The fund is substantially larger than the sum of the perfected federal tax lien and the award of attorney fees. Thus the federal tax lien is not impaired by an award of attorney fees.

I find that an allowance for attorney fees is appropriate here.

Batts testified that he had expended 6.7 hours on the legal problems surrounding the sale of the Debtor's assets and would bill the auctioneer at his normal rate of $85 per hour for a total bill $569.50. I find this amount to be reasonable under the circumstances, and the judgment being entered upon the Complaint authorizes the Plaintiff Trustee to pay Batts the sum of $569.50 out of the sales proceeds.

The Complaint, filed by the Trustee Plaintiff on December 14, 1981, having come on for trial on April 5, 1982, ruling then having been reserved; and a separate Memorandum Opinion having been filed in respect thereof on this date; for reasons appearing therein, it is ORDERED

That upon said Complaint, judgment be and it hereby is entered, in favor of said Trustee Plaintiff, and against the Defendants, in that

1. The garnishment liens of Defendants Granite Steel Metal Works, Inc., of Fehlig Brothers Box And Lumber Company, and of Valley Farm Dairy Company, be and each such lien is hereby avoided by said Trustee Plaintiff, the lien of Defendant Granite Steel Metal Works, Inc., being preserved for the benefit of this estate;

2. The tax lien of the Defendant United States of America, Internal Revenue Service, be and it hereby is subordinated, for distribution purposes, in accordance with the provisions of 11 U.S.C. § 724(b), to those claims described in said Section 724(b)(2);

3. That the Plaintiff Trustee retain the net auction sale proceeds, $10,499.80, together with any interest earned thereupon, for the purpose of distribution in accordance with the distribution provisions of Chapter 7 of the Bankruptcy Code; provided, however, and it is further ORDERED

4. That Defendant Art Britton Auction Sales, Ltd., be and it hereby is allowed the sum of $569.50, as an attorney's fee allowance, for services rendered in its behalf by Robert H. Batts, its counsel, in this proceeding; that said Plaintiff Trustee pay said sum out of the net auction sales proceeds, and pay said sum *to* said Robert H. Batts, such sum to be paid ahead of any other distribution of said net auction sales proceeds.