**In re R&T ROOFING STRUCTURES & COMMERCIAL FRAMING, INC., Debtor.**

**Harold Z. DANIEL, Trustee, Plaintiff,**

v.

**UNITED STATES DEPT. OF TREASURY, INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. BK–R–00017. Adv. No. 82–381.**

United States Bankruptcy Court, D. Nevada.

Sept. 20, 1984.

Bruce D. Roberts, Reno, Nev., for plaintiff.

Lamond R. Mills, U.S. Atty., Reno, Nev., Barry Lieberman, Tax. Div., Dept. of Justice, Washington, D.C., for defendant.

## ORDER

ROBERT CLIVE JONES, Bankruptcy Judge.

### Introduction

The present dispute comes to the Court on the defendant's motion for judgment on the pleadings. For the reasons detailed below, the motion is denied.

### Background

On 17 December 1982 the plaintiff, trustee of the Chapter 7 estate of R&T Roofing Structures & Commercial Framing, Inc., filed a complaint seeking the return of some $18,000 in cash levied on and seized by the IRS within 90 days of the debtor's 9 January 1981 petition filing date. This levy was in satisfaction of a duly-noticed tax lien (perfected outside the 90-day peri-

od) for unpaid employee withholding taxes, and dispossessed the debtor of what the trustee alleges to be the only asset of the estate. While not directly citing 11 U.S.C. § 547, the substance of the trustee's complaint is based upon that section, which empowers a bankruptcy trustee to avoid preferential transfers to a creditor under specified circumstances, unless the transfer fits within one of the Bankruptcy Code's [1] enumerated exceptions. § 547(b) and (c).

At the 6 September 1983 hearing on the motion the Court allowed and encouraged the trustee to amend his complaint so as to plead his § 547 cause with greater clarity and precision, and took under submission the defendant's motion. To date, no amended complaint has been filed.

*Discussion*

■ Although phrased in terms of a Fed. R.Civ.P. 12(c) motion (made applicable to bankruptcy court proceedings by Bankruptcy Rule 7012(b)) the Service's motion is essentially a challenge to the legal basis for the trustee's complaint. As such it is more akin to and will be treated as a Fed. R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, even though an answer has been filed. *Moxley v. Vernot*, 555 F.Supp.

554 (S.D.Ohio 1982).[2] The trustee's legal theory and the Service's counter arguments are discussed below.

**I.**

■ The trustee alleges that each of the elements of a § 547(b) avoidable preference have been satisfied by the Service's actions. These elements are: 1) a transfer of the debtor's property, 2) to or for the benefit of a creditor, 3) on account of an antecedent debt, 4) made within 90 days of bankruptcy, 5) while the debtor is insolvent, 6) with the effect of giving the creditor a greater return on his claim had the transfer not taken place and had there been a Chapter 7 liquidation. As phrased by the parties, the contest does not center on elements one through five. The levy was a transfer in the Bankruptcy Code's sense[3] of the debtor's property[4] to a creditor[5] on account of an antecedent debt.[6] This transfer was made within 90 days of the date the Chapter 7 petition was filed, and while the debtor was insolvent.[7]

Although the parties have not raised the issue, the satisfaction of § 547(b)'s "transfer" element may not be self-evident. While § 101(40) defines transfer very broadly[8] the use of "transfer" in the con-

1. "Bankruptcy Code" and "Code" as used in this decision refer to federal bankruptcy law as enacted in the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 to 151326, prior to the 1984 Amendments. "Bankruptcy Act" and "Act" refer to the former federal law, 11 U.S.C. §§ 1–1103 (repealed 1978).

2. Although the Service's counsel submitted with his motion a sworn declaration alleging certain facts "on information and belief," the Court will not treat the motion as one seeking summary judgment. Such a declaration does not "show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R. Civ.P. 56(e); *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370 (9th Cir.1978).

3. 11 U.S.C. § 101(40): "'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or *involuntary,* of disposing of or parting with property or with an interest in property, including retention of title as a security interest." (Emphasis added.)

4. The IRS admits in its answer that the cash seized was the debtor's property.

5. 11 U.S.C. § 101(9) defines "creditor" as an entity with a claim against the debtor that arose at the time of or before the order for relief. The IRS has filed a proof of claim listing prepetition secured and unsecured claims in excess of $50,000.

6. Admittedly, the IRS claim was an "antecedent debt owed by the debtor before the transfer was made." § 547(b)(2).

7. 11 U.S.C. § 547(f) provides for a presumption of insolvency during the 90 days before the filing of the petition. No argument to the contrary has been made by either party.

8. Explaining this definition, both the House and *Senate Reports* read: "A transfer is a disposition of an interest in property. The definition of transfer is as broad as possible.... Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody or control even if there is no transfer of title, because possession, custody, and control are interests in property." *H.R. Rep. No. 595, 95th Cong., 1st Sess. 314 (1977)*

text of 11 U.S.C. § 548 (fraudulent conveyances) has recently been given a narrower reading by a panel of the Ninth Circuit Court of Appeals. In *In re Madrid*, 725 F.2d 1197 (9th Cir.1984), the court held that the "transfer" of the subject real property did not occur at the nonjudicial foreclosure sale (conducted seven days before the debtor/owner filed her Chapter 11 petition) but at the time the deed of trust was perfected. As the time of perfection was outside the one-year period for finding a constructively fraudulent conveyance the foreclosure sale was not subject to a § 548 attack.[9]

In light of the *Madrid* case it might be argued that there was no transfer when the IRS, a secured creditor, enforced its lien by way of a levy, notwithstanding the plain terms of § 101(40). Just as the *Madrid* court concluded that "enforcement of a valid lien was not intended to be covered by § 548," *id.* at 1200, so perhaps, it might be argued, the enforcement of a lien was not intended to be a preferential transfer. This view is given some support by the *obiter dictum* found in footnote 2 of the *Madrid* decision, which describes its holding as consistent with an earlier line of "preference" cases:

> The principle running throughout those cases is that enforcement of a valid lien within four months [the preference period under former law] of bankruptcy petition filing cannot be struck down as a preferential transfer where the lien was perfected outside the ... reach back period. No matter what enforcement mechanism was employed, transfer for purposes of the preferential transfer section occurred at time of perfection of the lien, and not at time of enforcement.

725 F.2d at 1201 n. 2. Footnote two's persuasiveness in the present context, however, is questionable, when one notes that the three cases cited therein, all decided under former law, may not be applicable under current preference and transfer provisions.

In one case, *Clements v. Snider*, 409 F.2d 549 (9th Cir.1969), there was no explicit discussion of the transfer or time of transfer issue; instead, the finding of a non-preferential transfer simply turned on whether the creditor's debt was properly secured. By implication, the court held that repossession of the business property within the preference period was not voidable because the repossessing parties had properly secured the obligation outside the preference period. Presumably this was because the court believed the "transfer" (for preference purposes) occurred outside the preference period—when the chattel mortgage on the business fixtures and equipment was perfected.

Another case cited, *DuBay v. Williams*, 417 F.2d 1277 (9th Cir.1969), involved the question of a transfer's timing when "floating liens" on after-acquired property are at issue. The Ninth Circuit employed what one commentator has labeled "The Abracadabra, or the Transfer Occurred Before It Occurred, Theory." Countryman, *Code Security Interests in Bankruptcy*, 4 U.C.C. L.J. 35 (1971). This theory, whose creation was necessitated by commercial realities and the shortcomings of § 60 (preferences) of the Act, is that for bankruptcy purposes the "transfer" occurs upon perfection, not when the debtor acquires an interest in the after-acquired property during the preference period and the security interest attaches.[10] As the creditor in *DuBay* had

---

*reprinted in* 1978 CODE CONG. & AD.NEWS 5787, 5963, 6271 [hereinafter cited as CODE CONG.]; S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), *reprinted in* CODE CONG. 5787, 5813. *See also* 4 NORTON BANKR.L. & PRAC.LEGIS. HIST. § 101 (1983) [hereinafter cited as NORTON].

9. The recent amendments made to the Code by Pub.L. No. 98–353, the Bankruptcy Amendments and Federal Judgeship Act of 1984, add to the

definition of "transfer" the "foreclosure of the debtor's equity of redemption." See new § 101(48).

10. According to § 9–203 of the Uniform Commercial Code, NEV.REV.STAT. § 104.9203 (1979), "a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless .... (c) The debtor has rights in the collateral."

filed its financing statement long before the preference period, the court reasoned that "its security interest [was] immune from the trustee's preference challenge." *Id.* at 1288.

The *DuBay* case was but one prominent example of the creative efforts Act courts made to protect "worthy" transfers that otherwise might have been voided by operation of § 60. *See* Ward & Shulman, *In Defense of the Bankruptcy Code's Radical Integration of the Preference Rules Affecting Commercial Financing,* 61 Wash.U.L.Q. 1, 5–6 (1983) ("From the beginning, section 60 was highly conceptual, lacing a specific list of either included or excluded transfers. Section 60 case law soon developed a life of its own, nearly independent of the language of the section.") [hereinafter cited as Ward & Shulman]. Instead of relying on case law to fashion protection for legitimate and necessary prepetition financing arrangements that otherwise might be avoided as preferential, the Code's § 547(c) now lists six exceptions. "In opting for a list of protected preferential transfer, Congress abandoned earlier attempts to include exceptions by tinkering with the definition of a preference... It must be emphasized ... that *Congress did not intend to integrate two sets of* exceptions, *one derived from the statutory list of section 547(c), the other from section 60 case law* ... The new structure [of § 547] should herald a tighter, *more literal* construction of the familiar definitional language in section 547(b)." Ward & Shulman, *supra,* at 9 (emphasis added, footnote omitted).

The third case cited in footnote two provides another example of an effort to protect a worthy transfer. In *Evans v. Valley West Shopping Center, Inc.,* 567 F.2d 358 (9th Cir.1978) (per curiam), the court held that no preferential transfer existed when a landlord possessing a judgment for past due rent received payment by the debtor within the preference period. The court characterized the attachment of the landlord's lien, which occurred outside the preference period, as the transfer; the payment in satisfaction of the judgment was accorded no corresponding legal significance. The court's decision made no mention of *DuBay's* analysis, but was instead grounded on a narrow view of the Act's definition of transfer § 1(30), and Arizona lien law. Arguably it was an effort to rescue an innocent and well-intentioned secured creditor from the jaws of § 60. Given the Congressional intent underlying the enacting § 547, the "tinkering" practiced under former law should be largely unnecessary and minimized. Consequently, cases such as *Clements, DuBay,* and *Evans,* would perhaps be decided differently under the Code.[11]

■ Because of Congress' desire that § 60's baggage not burden decisionmaking under the new Code, because § 547(b)(5) provides ample protection for the usual case involving fully secured creditors who receive payments during the preference period, because this Court believes § 101(40)'s broad terms should not be read so narrowly that they foreclose the theoretical and practical possibility of multiple "transfers" within a single preference scenario,[12] cases such as *Clements, DuBay,* and *Evans* are inapposite to the present analysis. While there undoubtedly was a "transfer" when the Service's lien arose and the notice of lien was filed outside the

**11.** The floating lien problem *DuBay* addressed is now handled by § 547(c)(5) (the "enhancement of position" exception) and § 547(e)(3) (no "transfer" until the debtor has acquired rights in the property). The legislative history accompanying § 547 expressly mentions the overruling of *DuBay* by these two sections. H.R.Rep. No. 595, 95th Cong., 1st Sess. 374–75 (1977), *reprinted in* CODE CONG., *supra* note 8, at 5963, 6330;

S.Rep. No. 989, 95th Cong., 2d Sess. 88–89 (1978), *reprinted in* CODE CONG., *supra,* note 8, at 5787, 5874–75. *See also* NORTON, *supra,* note 8, at § 547.

**12.** This very point was raised in *Madrid's* concurring opinion. "The flaw in [the majority's] approach is its assumption that there can be only one transfer." 725 F.2d at 1204 (Farris, J., concurring).

preference period,[13] to say no transfer occurred when the levy was made unnecessarily tortures the expansive language of Code § 101(40). Ordinarily, because a fully secured creditor who enforces his lien within the preference period will not receive any more through enforcement than through the Chapter 7 distribution scheme, it may be said that no transfer occurs upon enforcement. But by virtue of the subordinating effect of § 724(b), discussed *infra*, the Service, a secured creditor, did receive much more through its levy than it otherwise would have without it. In the sense of receiving "more" a transfer did occur. At the very least, the debtor's possessory property right to the cash was transferred upon levy.[14] Accordingly, the Court concludes the IRS levy constituted a "transfer" for purposes of § 547(b).

## II.

Most crucial to the trustee's preference argument is the proposition that the IRS, by operation of § 724(b),[15] would have received less under Chapter 7 liquidation than it did receive through its prepetition levy. If this is true, then the sixth and final element of § 547(b) would be satisfied and the requested motion must be denied[16]—the trustee having shown at least a prima facie avoidable preference.

In its attempt to defeat the section's application to element six, the IRS argues that § 724(b), which subordinates tax liens to certain administrative expenses, has no bearing on the present facts because the essential predicates for its operation are missing. Specifically, the statute requires that, prior to subordination, there must exist "[p]roperty in which the estate has an interest ... that is subject to a lien ... that secured an allowed claim for taxes." First, the IRS argues that its prepetition levy completely divested the debtor of the subject property, thereby precluding the estate from ever asserting any interest in it. Second, the IRS contends that its tax liens were released once the levy was satisfied and that no further claim for taxes has been made against the debtor's estate. The latter point is contradicted by the Service's amended proof of claim, filed on 14 April 1983, showing a prepetition secured tax claim in excess of $37,000; the former point misapprehends the purpose of § 547 and the peculiar power a trustee has to acquire property for the estate.

**13.** 26 U.S.C. §§ 6321–6323 provide that a federal tax lien on all of the taxpayer's property arises upon assessment, but is only valid as against most third parties upon the filing of a proper notice of lien.

**14.** *Supra,* note 8.

**15.** Bankruptcy Code § 724(b):
(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for taxes, or proceeds of such property, shall be distributed—
(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
(2) second, to claims specified in sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), and 507(a)(5) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
(3) third, to the holder of such tax lien, to any extent that such holder's allowed claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;
(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and
(6) sixth, to the estate.
According to one authority, "[t]he effect of section 724(b) is to treat a tax lien as a claim between the fifth and sixth priority under section 507(a) rather than as a secured claim ... Section 724(b) is derived from section 67c(3) of the prior Act. Congress recognized in enacting that provision for subordination of tax liens under the prior Act that this type of statutory lien presented the most acute instance where assets of the estate may be consumed to the detriment of certain priority creditors." 4 COLLIER ON BANKRUPTCY § 724.03[1] at 724–5, 6 (15th ed.1983).

**16.** The IRS is, in effect, seeking a declaration that a prepetition levy on cash is unrecoverable by a bankruptcy trustee under any theory. Therefore, the IRS reasons, it is entitled to the summary disposition requested.

■ Property of the estate is defined by 11 U.S.C. § 541. As the United States Supreme Court recently observed, that section "is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). The "other provisions" specifically referenced by the Supreme Court included § 547.[17] This is in recognition of the role § 547 (and such sections as 543 and 548 of the Bankruptcy Code) plays in augmenting the pool of estate property to be used for distribution to the estate's creditors. In its brief, the Service has attempted to ignore or sidestep the trustee's right to apply § 547 to retrieve the debtor's property. In so doing, the IRS fails to realize that, in essence, every unrecovered preferential transfer voluntarily or involuntarily divests the debtor of property[18] in which the estate would otherwise have an interest. In cases involving a potential avoidable preference the question is not whether the subject property held by another was estate property when the petition was filed, but whether the given facts allow the trustee to exercise § 547's power and transform what was once the debtor's property into what is now the estate's property. The perhaps harsh result of allowing retrieval of property, while upsetting a creditor's contractual or statutory rights, is not surprising given § 547's purpose:

> The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), *reprinted in Code Cong., supra* note 8, at 5787, 6138. The policy of preserving the Chapter 7 distribution scheme is no less important than the policy of promoting equality of distribution among members of a particular class, and § 547 is an important tool to be used in protecting the integrity of the Chapter 7 distribution outlined in §§ 724 and 726.

■ There is no support in the legislative history or the Code itself for the notion that the IRS is to be treated differently, *i.e.*, more favorably than other creditors who recover the debtor's property during the preference period. Indeed, in discussing the exercise of the trustee or debtor in possession's § 542(a) turnover power (analogous to § 547 in that it too enables the recovery of property for the estate), the Supreme Court has said: "Nothing in the Bankruptcy Code or its legislative history

---

**17.** In the same footnote that mentioned § 547, 462 U.S. 198, 103 S.Ct. at 2313 n. 10, the Supreme Court noted that Congress excluded from § 541's reach the property of others held in trust by the debtor. The Court also said, "it may well be that funds the IRS can demonstrate were withheld for its benefit pursuant to 26 U.S.C. § 7501 (employee withholding taxes) are excludable from the estate ...." In this case, the IRS has not alleged that the account levied on was a trust account for its benefit.

**18.** While immaterial in relation to § 547, the fact that title to property may have passed to the

IRS upon a prepetition levy is important in the context of the turnover of estate property. 11 U.S.C. § 542(a) requires the turnover "of property that the trustee may use, sell or lease under section 363 ..., or that the debtor may exempt under section 522." The property referred to in Bankruptcy Code § 363 is "property of the estate," which, in turn, is defined by § 541(a) as including "all legal or equitable interests of the debtor in property as of the commencement of the case." Therefore, before § 542 applies it must be shown that the debtor had some interest in the property on the petition date. *Whiting Pools*, 462 U.S. 198, 103 S.Ct. at 2316.

indicates that Congress intended a special exception for the tax collector in the form of an exclusion from the estate of property seized to satisfy a tax lien." *Whiting Pools*, 462 U.S. 198, 103 S.Ct. at 2316. Accordingly, once § 547 is used to recover property for the estate, then § 724(b)'s application is considered.

### III.

■ Another argument posited by the IRS in support of its motion is that the trustee cannot use § 547 to defeat a valid tax lien. While it is true that § 547(c)(6) expressly prevents the use of § 547(b) to avoid the fixing of a statutory tax lien, that subsection does not carve out an exception that excludes the avoidance of transfers (such as an IRS levy) in satisfaction of a tax lien.[19] In fact, the legislative history of § 547 reveals that an earlier version of what was to become § 547(c)(6) originally protected from preference attack a transfer in satisfaction of such liens. This broadening of the exception was deleted before passage of the final bill. H.R.Rep. 595, 95th Cong., 1st Sess. 374 (1977); *reprinted in Code Cong., supra* note 8, at 5963, 6330; S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978) *reprinted in Code Cong., supra* note 8, at 5787, 5874. *See also Norton, supra*, note 8 at § 547; Nowak, *Turnover Following Prepetition Levy of Distraint Under Bankruptcy Code § 542*, 55 Am.Bankr.L.J. 313, 318 (1981) ("This language was deleted in a conscious attempt to subject the activities of taxing authorities to section 547.") [hereinafter cited as Nowak].

### IV.

■ Just as § 547 may be applied to avoid a levy in satisfaction of a tax lien, so § 724(b) is applicable to taxing authorities that have levied on property prepetition. The legislative history indicates that S.

2266, 95th Cong., 2d Sess. (1978), initially sought to subordinate only those tax liens secured by personal property that had not been levied on and seized. *Norton, supra*, note 8, at § 724(b). That provision, of course, would have prevented subordination of the Service's claim in distribution under the present facts. The final version of § 724(b) does not make such a distinction and subordinates all secured tax claims, thereby recognizing that even a prepetition levy is no shield to § 724(b).

Use of § 724(b) in this case would reduce, if not completely eliminate,[20] the amount of money the IRS received through its levy. As § 507(a)(1)–(5) priority claims must be paid before the tax lien claims, and as there are over $20,000 in such claims[21] (excluding any § 507(a)(1) costs of administration), the $18,850.18 recovered prepetition is far more than the IRS could otherwise hope to receive under a Chapter 7 liquidation.

■ Support for this perhaps unusual use of § 547(b) and § 724(b) is found in Nowak, *supra*, at 318–22; 4 *Collier on Bankruptcy* ¶ 547.42 at 547–131 (15th ed. 1983); *Norton, supra*, note 8, at § 547; and *Matter of Community Hosp. of Rockland County*, 15 B.R. 785 (Bankr.S.D.N.Y. 1981) (dictum). This support is not universal. At least three bankruptcy courts have rejected the argument that a prepetition tax levy can be avoided as a preference by operation of § 724(b)'s subordination. *In re Roger's Refrigeration, Inc.*, 33 B.R. 59 (Bankr.D.Ore.1983); *In re Riverfront Food and Beverage Corp.*, 29 B.R. 846 (Bankr.E. D.Mo.1983) (dictum); *In re Debmar Corp.*, 21 B.R. 858 (Bankr.S.D.Fla.1982) (dictum). While certain arguments made by these three courts have some practical appeal, because of the plain language of the statutes, and the Senate's aborted attempt to exclude previously levied tax liens from subordination to most priority claims, the Court concludes that the trustee's use of § 547(b) is proper.[22] This conclusion might

---

**19.** "[T]he legislative history taken as a whole indicates that the list of protected transfers in section 547(c) was intended as the exclusive list of exceptions." Ward & Shulman, *supra*, at 16.

**20.** Debtor's Schedule A–1 (creditors having priority) lists a total of $24,384.41 in claims owed

to Carpenters Local 971, trustee of the Health & Welfare, Pension, and Vacation Funds.

**21.** *Id.*

**22.** Moreover the trustee's theory of recovery under these facts would produce a result consistent with results under similar circumstances.

be different if the trustee and his counsel were merely attempting to retrieve the property for the sole purpose of creating a fund for their own fees; but here there are other nonadministrative priority claims that have a superior right to payment *vis-a-vis* the IRS. These claimants' right to recovery should not be thwarted because of what some may view as an arcane use of the preference law. Again, Congress could have protected IRS prepetition levies from the operation of § 547(b) and § 724(b), but did not.

*Conclusion*

Pending any future request by the trustee for summary disposition of this complaint, he is again requested to amend the complaint to more accurately reflect the basis for the relief sought. As for the present matter, because the trustee has alleged facts and law in support of a valid cause of action it is hereby,

ORDERED, ADJUDGED, AND DECREED that the defendant's motion is denied.

If, for example, the Service's prepetition claim had been unsecured and there had been a voluntary payment within the 90 days before filing there would have been an avoidable preference. Also, if there had been a lien only, without a voluntary or involuntary payment, the secured portion of the IRS claim would be subject to § 724(b)'s subordination. The Court believes that these similar fact patterns should produce a consistent result which should not be altered by the fortuity of a levy shortly before the petition.